**Susan Carol HANKS, Appellant,**

v.

**GENERAL MOTORS CORPORATION, Appellee.**

No. 89–1557.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 16, 1990.

Decided June 18, 1990.

Paul Alan Levy, Washington, D.C., for appellant.

R. Kent Sellers, Kansas City, Mo., for appellee.

Before ARNOLD and BOWMAN, Circuit Judges, and HEANEY, Senior Circuit Judge.

HEANEY, Senior Circuit Judge.

Susan Carol Hanks appeals the district court's grant of summary judgment in favor of General Motors (GM). She asserted several state law claims arising from GM's decision to place her under the supervision of a person who was arrested for sexually assaulting her daughter. The district court held that her state law claims were preempted by federal labor law because the claims involved issues of Hanks' job assignment and transfer. These issues, according to the district court, could be resolved only by analyzing the collective bargaining agreement. We reverse and hold that there is no preemption because her claims are independent of that agreement.

## BACKGROUND

GM hired Hanks in September 1977 as a line worker in the hard trim department at GM's Leeds plant in Kansas City, Missouri. On January 23, 1985, Lee Cobb, Hanks' supervisor, sexually assaulted Hanks' daughter. The police arrested Cobb on February 11, 1985 at the Leeds Plant in full view of Hanks' co-workers, who were fully aware of circumstances leading to Cobb's arrest. On March 6, 1985, Hanks entered a hospital for treatment of severe depression. She remained in the hospital for over three weeks. GM then ordered Hanks to undergo examinations by a GM physician for the purpose of determining Hanks' ability to return to work. After a second examination by the same physician, GM sent her a notice that she was to return to her former assignment. Cobb continued to be the foreman and supervisor of the line to which Hanks was directed to return. Hanks failed to return to work. GM then sent her a letter stating that her seniority had been broken and that GM considered her to have voluntarily quit her employment.

Hanks was a member of The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Local Union No. 93. The collective bargaining agreement between the Union and GM established a grievance procedure for employee complaints over such issues as sick leave, leaves of absence, work assignment, and discharge. The first step of this procedure was to file a grievance with the employee's foreman.

Hanks did not timely file a grievance, but instead filed this action against GM in Missouri state court. The complaint contained four counts: outrageous conduct on the part of GM, wrongful discharge, prima facie tort, and intentional infliction of emotional distress. She asked for damages only.

GM removed the action to federal district court on the basis of federal question and diversity jurisdiction, and subsequently moved to dismiss or, in the alternative, for summary judgment on all claims because § 301 of the Labor–Management Relations Act (LMRA) preempted Hanks' state law claims and because Hanks failed to state a cause of action under Missouri law. The district court determined that § 301 preempted all of Hanks' claims and granted summary judgment in GM's favor. It also dismissed the wrongful discharge claim for failure to state a claim. Hanks appealed.

On appeal, we affirmed the district court's dismissal of the wrongful discharge claim. *Hanks v. General Motors Corp.*, 859 F.2d 67 (8th Cir.1988). We remanded the remainder of the case, however, to determine whether resolution of each claim required construction or interpretation of the collective bargaining agreement, because that determination triggers the preemption issue. *Id.* at 70.

On remand, the district court held that the three remaining claims were connected to Hanks' job assignment and could only be

resolved by reference to the terms and provisions of the collective bargaining agreement. It found that because the collective bargaining agreement permits GM in some circumstances to terminate Hanks, reference to the agreement was necessary to determine whether Hanks' claims had merit. Thus, according to the district court, Hanks' three remaining claims were preempted by the LMRA. Hanks appeals for a second time to this Court.

## DISCUSSION

Hanks describes her claims as independent of the collective bargaining agreement.[1] Her claims are:

(1) GM intentionally inflicted emotional distress upon Hanks by requiring her to return to a job that was under the direct supervision of the person who sexually assaulted her daughter;

(2) GM's conduct, by intentionally or recklessly requiring Hanks to work under the direct supervision of the person who sexually assaulted her daughter, was extreme and outrageous;[2] and

(3) GM intentionally injured Hanks without justification.

■ To prevail on either her intentional infliction of emotional distress claim or her outrageous conduct claim, Hanks must prove that GM's conduct in requiring her to work with the person who sexually assaulted her daughter was extreme and outrageous, that GM acted intentionally or recklessly, and that GM's conduct resulted in significant, medically diagnosable emotional distress or mental injury. To prevail

on prima facie tort, Hanks must prove that GM intentionally injured her by its conduct without sufficient justification. Hanks maintains that none of these inquiries require reference to the collective bargaining agreement.

GM's theory of preemption is that its defense to Hanks' claims requires an examination of the collective bargaining agreement. The essence of GM's defense is that its actions taken with respect to Hanks were in compliance with provisions of the collective bargaining agreement. Thus, it was justified in dismissing Hanks.

■ The Supreme Court construes § 301 of the LMRA to preempt state law claims where the resolution of the state law claim "substantially depends" on the interpretation of terms or provisions of a collective bargaining agreement. *See, e.g., Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 1915, 85 L.Ed.2d 206 (1985). If the state law claim is "inextricably intertwined with consideration of the terms of the labor contract," that claim is preempted. *Id.* at 213, 105 S.Ct. at 1912. If the claim is not "inextricably intertwined" with a collective bargaining agreement, that claim is independent and is not preempted. *Lingle v. Norge Division, Magic Chef,* 486 U.S. 399, 407, 108 S.Ct. 1877, 1882, 100 L.Ed.2d 410, 419 (1988). Finally, a state law claim may involve analysis of the same set of facts as a claim arising under the collective bargaining agreement without compelling preemption. *Id.* at 407–08, 108 S.Ct. at 1882–83, 100 L.Ed.2d at 419–20.[3]

---

**1.** Describing claims in such a manner is typical of plaintiffs in Hanks' position. Our inquiry is more searching than the mere form of the claim. We ask whether the claim is, in fact, independent of the collective bargaining agreement.

**2.** The district court notes that, under Missouri law, claims one and two are identical.

**3.** The *Lingle* Court stated the following regarding factual questions in which both the elements of and defenses to a state law claim were identical to elements of and defenses to a claim under a collective bargaining agreement:

Each of these purely factual questions [involved in the employee's complaint and em-

ployer's response] pertains to the conduct of the employee and conduct and motivation of the employer. Neither of the elements requires a court to interpret any term of a collective-bargaining agreement. To defend against a retaliatory discharge claim, an employer must show that it had a non-retaliatory reason for the discharge; this purely factual inquiry likewise does not turn on the meaning of any provision of a collective-bargaining agreement. Thus, the state-law remedy in this case is "independent" of the collective-bargaining agreement in the sense of "independent" that matters for § 301 pre-emption purposes: resolution of the state-law claim

With these standards and principles in mind, we examine Hanks' state law claims to determine whether interpretation of the collective bargaining agreement is necessary to resolve the claim. *See Johnson v. Anheuser Busch, Inc.*, 876 F.2d 620, 623 (8th Cir.1989).

Our review of Hanks' claims confirms that they are closely parallel to claims in which the Supreme Court has found no preemption. None of her claims allege that GM violated any duty explicitly or implicitly arising from the collective bargaining agreement. None of her claims are "inextricably intertwined" with that agreement. Her claims can and must be resolved independent of any terms or provisions of the collective bargaining agreement.

Hanks accuses GM of acting outrageously, of intentionally inflicting emotional distress, and intentionally injuring Hanks by requiring her to work with a person who sexually assaulted her daughter. These involve duties owed by GM to every member of society, not just to employees covered by the collective bargaining agreement. *See United Steelworkers of America v. Rawson*, —— U.S. ——, —— ——, 110 S.Ct. 1904, 1910–11, 109 L.Ed.2d 362 (1990) (holding that the state law claim was preempted because it was inextricably intertwined but stating that the result would have been different if the defendant had violated a general duty owed to all citizens);[4] *see also Allis–Chalmers*, 471 U.S. at 211–12, 105 S.Ct. at 1911–12 (§ 301 does not grant the parties to a collective bargaining agreement the ability to contract for what is illegal under state law); *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 51, 94 S.Ct. 1011, 1021, 39 L.Ed.2d 147 (1974) (while certain rights under the NLRA are waivable, an individual's substantive right derived from an independent body of law cannot be avoided by a contractual agreement).

To determine the merits of any of Hanks' claims, neither the trier of fact nor the trier of law has to determine whether her discharge was warranted under the terms and provisions of the collective bargaining agreement.[5] *See Johnson v. Anheuser Busch, Inc.*, 876 F.2d at 624. The same can be said of GM's defense: To determine whether GM's compliance with the collective bargaining agreement is a defense to Hanks' claims, an interpretation of that agreement is not required. Thus, Hanks' state law claims are "independent" of the collective bargaining agreement. *See id.* Because of the "independence" of Hanks' claims, permitting Hanks' state law claims to go forward will not interfere with the collective bargaining process or deter the

does not require construing the collective-bargaining agreement.
*Lingle*, 486 U.S. at 407–08, 108 S.Ct. at 1882–83, 100 L.Ed. at 419–20 (citations omitted).

**4.** Inasmuch as the opinion of the Ninth Circuit in *Miller v. AT & T Network Services*, 850 F.2d 543 (9th Cir.1988), would suggest a result different from the one indicated by the *Rawson* dicta, we disagree. The Ninth Circuit in *Miller* unjustifiably extends the holding in *Allis–Chalmers* and makes an unprincipled distinction between vague and clear standards of liability. *See Rawson*, —— U.S. at ——, 110 S.Ct. at 1910 (specifically noting that certain generalized duties are not preempted).

**5.** This case differs from *Newberry v. Pacific Racing Ass'n*, 854 F.2d 1142 (9th Cir.1988), where the plaintiff's
complaint demonstrates how firmly her claim is structured upon an interpretation and analysis of the collective bargaining agreement. In her complaint, Newberry makes several references to the labor contract that governed "the conditions of her employment." "Pursuant to said employment agreement, Defendants promised that plaintiff's employment would continue indefinitely, that Defendants ... would not act arbitrarily in dealing with Plaintiff, and that Plaintiff's employment would not be terminated except for good, just and legitimate cause or reason."
*Id.* at 1147 (citations omitted).
Two other cases cited by GM are of a similar vein. In *Willis v. Reynolds Metals Co.*, 840 F.2d 254, 255 (4th Cir.1988), the Fourth Circuit held that several state tort claims were preempted because the claims were grounded on the employer's failure to abide by the collective bargaining agreement. In *Stallcop v. Kaiser Foundation Hospitals*, 820 F.2d 1044, 1048–49 (9th Cir.1987), the Ninth Circuit held state law claims were preempted because the plaintiff admitted that all her claims stemmed from the collective bargaining agreement and because the claims were couched in terms of a breach of an oral agreement that was incorporated into the collective bargaining agreement.

effectiveness of arbitration, *see Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–04, 82 S.Ct. 571, 576–77, 7 L.Ed.2d 593 (1962), and will not result in conflicting interpretations of collective bargaining agreements, *see Allis–Chalmers*, 471 U.S. at 210–11, 105 S.Ct. at 1910–11.

Moreover, the possibility that Hanks had a grievance under the collective bargaining agreement is not sufficient to conclude that preemption is in order.[6] *Keehr v. Consolidated Freightways, Inc.*, 825 F.2d 133, 137 (7th Cir.1987). From our reading of the collective bargaining agreement, we doubt that a grievance of this character was contemplated by the parties. *See Tellez v. Pacific Gas & Elec. Co.*, 817 F.2d 536, 539 (9th Cir.1987) (claim of intentional infliction of emotional distress was not preempted because "collective bargaining agreement does not envision such [outrageous] behavior" by employer and "its grievance mechanism is not equipped to redress it"). More importantly, none of the terms or provisions of that agreement shed any light on the appropriateness of GM's conduct. *See Lingle*, 486 U.S. at 407–08, 108 S.Ct. at 1882–83, 100 L.Ed.2d at 419–20.

Finally, we find the result and reasoning set forth in *Keehr v. Consolidated Freightways, Inc.*, 825 F.2d 133 (7th Cir. 1987), to be persuasive. In *Keehr*, an employee brought a claim of intentional infliction of emotional distress against his employer. He maintained that his employer had targeted him for harassment to provoke him to throw a punch at a supervisor in order to give his employer a reason to discharge him. Both the district court and the Seventh Circuit rejected the employer's arguments that Keehr's claim was preempted.

> The mere fact that [Keehr] might be able to grieve [the employer's] conduct under procedures provided in the collec-

tive bargaining agreement is not sufficient in itself to conclude that [Keehr's] tort claims are preempted. The crucial issue under *Allis–Chalmers* is not whether a claim can be taken through the grievance process but whether the state law tort claim being asserted purports to give meaning to the terms of the labor contract. [The employer] has not suggested that [Keehr's] claims are in any way derived from rights or duties provided for under the contract. Because the resolution of [Keehr's] tort claims in no way depends on an interpretation of the labor contract, we conclude that [his claims] are not preempted by section 301.

*Id.* at 137. The *Keehr* court also noted the significance of Keehr's claim that his damage resulted from his employer's abusive statements and not from his discharge. *Id.* at 137–38 n. 6.

In this case, none of Hanks' claims purport to give meaning to the terms of the collective bargaining agreement. Her claims are not derivative of any rights or duties provided by that agreement. She asks for damages not for her discharge, but for harm that allegedly resulted from GM requiring her to work under the supervision of the person who sexually assaulted her daughter.

Because Hanks' claims in no way depend on an interpretation of a collective bargaining agreement, we conclude that her claims are not preempted by § 301 of the LMRA. Consequently, we reverse the district court and remand this matter for trial.[7]

---

**6.** GM argues that the only job to which it could have called Hanks back was the one she held at the time of her hospitalization. It asserts that to place her in any other position would affect seniority rights of other employees. We need not determine whether there is any merit to this argument because Hanks is not seeking reinstatement; rather, she seeks only damages. We note that one solution to the problem of rehiring Hanks would have been to reassign the foreman to another position where he would not have had contact with Hanks.

**7.** GM argues that we should affirm on the alternative ground that Hanks has failed to state a claim in light of *Brown v. Missouri Pacific R.R.,*

720 S.W.2d 357 (Mo. banc 1986) and *Kansas City Ry. v. Gant,* 738 S.W.2d 490 (Mo.App.1987). We disagree. Both of the cited cases refer to claims whose resolution the Missouri courts explicitly found to depend on reference to collective bargaining agreements. As such, those claims were preempted by federal law. In *Brown,* the Missouri Supreme Court remarked that the plaintiff "admits that there is no evidence of 'personal abuse', or 'outrageous conduct', necessary to a tort claim for intentional infliction of emotional distress." *Brown,* 720 S.W.2d at 361; *see also Dake v. Tuell,* 687 S.W.2d 191, 194 (Mo. banc. 1985) (Blackmar, J., concurring) (warning that the holding of failure to state a claim was authoritative only on the facts before the court and that a claim for conduct resulting in employment termination may be available at common law, referring to *Lucas v. Brown & Root, Inc.,* 736 F.2d 1202 (8th Cir.1984) (holding that Arkansas' "at will" rule

permits a claim that the plaintiff was terminated because she refused to sleep with her foreman, an act that violates public policy)); *Frye v. CBS, Inc.,* 671 S.W.2d 316 (Mo.App.1984) (applying Missouri state torts of outrageous conduct and intentional infliction of emotional distress to a claim resulting from an adverse work assignment); *Lundberg v. Prudential Ins. Co. of America,* 661 S.W.2d 667 (Mo.App.1983) (applying a prima facie tort analysis to an employment discharge).

Thus, we need not reach the question whether the law of this case, *Hanks v. General Motors Corp.,* 859 F.2d 67 (8th Cir.1988), holds that Hanks has stated valid claims under Missouri law.