**Cesar GALVEZ, Plaintiff–Appellant,**

v.

**Carl KUHN, Anchor Glass, Inc., Defendants–Appellees.**

**No. 89–16562.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 11, 1990.

Decided May 21, 1991.

Georgia Ann Michell, Ganong & Michell, Walnut Creek, Cal., and Alan R. Bergman, Appellate Law Offices of Alan R. Bergman, Walnut Creek, Cal., for plaintiff-appellant.

Rebecca A. Hull and James S. Brown, Sedgwick, Detert, Moran & Arnold, San Francisco, Cal., for defendants-appellees.

Before D.W. NELSON, KOZINSKI and NELSON, Circuit Judges.

D.W. NELSON, Circuit Judge:

With this case, we revisit the field of labor law by asking a familiar question: Are an employee's claims, in this instance alleging assault and battery and intentional infliction of emotional distress, preempted by Section 301 of the Labor Management Relations Act (LMRA)? Familiarity, however, has not bred facility. There is no sure route through the thicket and, as we face this problem anew, we once again must hack our way through the tangled and confusing interplay between federal and state law.

### Facts

At the time of the alleged incident, appellant Cesar Galvez, a native of Peru, was employed by Anchor Glass Container Corporation (Anchor), a bottle manufacturing facility in Antioch, California. A member of the union, his terms and conditions of employment were governed by a collective bargaining agreement (CBA). At all relevant times, appellee Carl Cook[1] was the foreman on Galvez' shift and in that capacity supervised his work.

According to Galvez' complaint and deposition, for a period of five months prior to the date of the central incident Cook had persistently harassed him in various ways.

1. He is mistakenly identified in Galvez' complaint as Carl Kuhn.

Things came to a head on the evening of October 28, 1987. Earlier that day, Cook had purportedly shouted a racial slur at appellant. Galvez' job that evening was to remove boxes from a conveyor belt and then stack them on pallets. According to Galvez, Cook sped up the line by manually disengaging the limit switch which served to shut off the belt when a carton of bottles reaches the stacking area. With the limit switch disengaged, the conveyor belt ran uninterrupted and cartons piled up.

Galvez claims that in so doing, Cook "intentionally, maliciously, and willfully, in acts of unprovoked physical aggression, assaulted and battered plaintiff by increasing the speed on the line in the stacking area and then exhorting plaintiff to keep up with the line." [2] This lasted approximately 45 minutes to an hour. As a result, appellant claims to have suffered severe physical injuries.[3] Finally, Galvez claims that he encountered an inspector after he had returned to the plant from the hospital on the night of October 28–29. The inspector allegedly made racially derogatory remarks and threatened Galvez.

Appellant filed a complaint in California state court, charging assault and battery and alleging that Cook's actions, including his racial slurs, amounted to intentional infliction of emotional distress. Thereafter, appellees Cook and Anchor removed the action to federal court, claiming that it was governed by section 301 of the LMRA. They then filed a motion for summary judgment on the grounds that the state-law claims were preempted by § 301 and that

plaintiff had failed both to exhaust his CBA remedies and to bring his suit within the required six-month limitations period. In the alternative, appellees argued that Galvez' state-law claims were preempted by California's Workers' Compensation Act.

The district court granted summary judgment for the defendants. It concluded that the claims were preempted by § 301, that Galvez had not exhausted appropriate grievance procedures, and that his claim, once converted into a section 301 cause of action, was time-barred. In the alternative, it ruled that Galvez' claims lacked merit and that they were subject to the exclusive remedy provisions of California's Workers' Compensation Act. Galvez filed this timely appeal.

## Discussion

### I. Federal Subject–Matter Jurisdiction [4]

■ Where, as here, removal jurisdiction is predicated on the existence of a federal question,[5] the federal question generally must appear on the face of the plaintiff's complaint. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). Accordingly, a party's interjection of a federal defense ordinarily will not suffice to remove a case. *Id.* at 393, 107 S.Ct. at 2430. Nevertheless, the "complete preemption doctrine" carves an exception to this rule. "Once an area of state law has been completely preempted, any claim purportedly based on that preempted state law is considered, from its

2. As Galvez explained:
 The boxes come in tight up against each other because the switch is open, so they are completely under pressure, one against the other. If you pull one box all the other boxes come together, not only one of them comes out, but two or three of them....
 There was no space between the cases and there was a lot of pressure in between. In order to bring up one box one would have to use part of one's body to hold the first box and then the other box you'd hold it with another hand, and then bring up the middle one with another hand.
3. Because of these injuries, Galvez purportedly has ceased to work and is currently on unpaid disability leave. As of the time of the filing of

the opening brief, he was awaiting surgery on his neck.

4. Although plaintiff has not raised this issue, defects in subject-matter jurisdiction are not waivable, *American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 17–18, 71 S.Ct. 534, 541–42, 95 L.Ed. 702 (1951), and may be raised by the court sua sponte. *See* 14A *Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d* [hereinafter *Wright & Miller*] § 3721, at 229 & n. 113 (1983).

5. At least one of the defendants is a citizen of California; accordingly, the action could not have been removed on the basis of diversity of citizenship. *See* 28 U.S.C. § 1441(b).

inception, a federal claim, and therefore arises under federal law." *Id.* In those instances, a claim that seemingly rests solely on state law may nonetheless be removable. Controversies involving collective-bargaining agreements constitute one such area. *See Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988); *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).

Jurisdictional and preemption questions are thus tightly intertwined; "the issues of federal preemption and removability largely merge." *Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1329 (6th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989). The district court, apparently overlooking this point, concluded that Galvez' action was preempted or, in the alternative, that his state law claims should be dismissed on other grounds. In the instant case, however, without preemption, there is no jurisdiction; without jurisdiction, there are no alternative grounds of decision to consider.

■ In short, it is critical to distinguish the *merits* of the case from its jurisdictional basis—the question whether Galvez has presented genuine issues of material fact from the question whether what he has presented falls under the scope of the LMRA. That his suit might not survive a motion for summary judgment in *state* court is irrelevant to whether it has its place in a *federal* forum to begin with.

### II. Federal Preemption

a. Standard of Review

Preemption is a question of law reviewed de novo. *Harris v. Alumax Mill Products, Inc.*, 897 F.2d 400, 402 (9th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 102, 112 L.Ed.2d 73 (1990); *Vincent v. Trend Western Technical Corp.*, 828 F.2d 563, 565 (9th Cir.1987).

b. Preemption Under the LMRA

Section 301(a) of the LMRA, 29 U.S.C. § 185(a), provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

At first blush, both the rationale and method of analysis in preemption cases are straightforward: § 301 was intended "to ensure uniform interpretation of collective-bargaining agreements." *Lingle*, 486 U.S. at 404, 108 S.Ct. at 1880. Therefore, preemption will be found only if the application of state law "requires the interpretation of a collective-bargaining agreement." *Id.* at 413, 108 S.Ct. at 1885; *see also Ackerman v. Western Electric Co., Inc.*, 860 F.2d 1514, 1517 (9th Cir.1988) (holding that "[i]f the state law claim can be resolved without interpreting the agreement, the claim is independent for § 301 pre-emption purposes"). The question, in sum, is whether "the state law factual inquiry ... turn[s] on the meaning of any provision of the collective-bargaining agreement." *Ackerman*, 860 F.2d at 1517. Nor are we deprived of authoritative statements to guide our way: *Lingle* is one, *Allis–Chalmers* another.

In reality, section 301 has been the precipitate of a series of often contradictory decisions, so much so that "federal preemption of state labor law has been one of the most confused areas of federal court litigation." *Note, The Need for a New Approach to Federal Preemption of Union Members' State Law Claims*, 99 *Yale L.J.* 209, 209 (1989) (hereinafter *Note* ). This case is no disproof.

1.

■ We begin with the easier of the two claims, that alleging assault and battery. Appellees insist that the dispute necessarily requires interpretation of the collective bargaining agreement. In essence, they argue that appellant's complaint is nothing more than a safety and employment condition grievance masquerading as an assault

and battery claim. Where, when and how Galvez must work are matters for labor arbitration, covered by the CBA, and intended to be governed by its terms.[6] Moreover, if Galvez believes that Cook's actions were motivated by a desire to fire him, appellees contend that resolution of the claim also hinges on an interpretation of CBA sections regulating the release and discharge of employees. Agreeing, the district court similarly found plaintiff's claim to be "premised upon such matters as disputes over union seniority and work assignments."

Camouflaged or not, Galvez' claim must be taken at face value at this early stage of the litigation. Under California law, an assault is "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another;" a battery is "any willful and unlawful use of force or violence upon the person of another." Cal. Pen.Code §§ 240, 242. The prohibition against such acts exists independent of any contract, as does the state law standard defining their commission. Because "§ 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law," *Allis–Chalmers*, 471 U.S. at 212, 105 S.Ct. at 1912, Galvez' claim cannot require interpretation of the agreement's negotiated provisions.

Appellees' invocation of *United Steelworkers of America v. Rawson*, —— U.S. ——, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990), is of no avail; indeed, far from fortifying their position, it further undermines it. In *Rawson*, survivors of miners killed in an underground fire alleged that the Union, the miners' exclusive bargaining representative, had negligently inspected the mine. In holding that the tort claim was preempted by § 301, the Supreme Court stressed that the source of the Union's duty "was one allegedly assumed by the Union in the collective-bargaining agreement." *Id.* 110 S.Ct. at 1910. It went on to explain:

> This is not a situation where the Union's delegates are accused of acting in a way that might violate the duty of reasonable care owed to every person in society. There is no allegation, for example, that members of the safety committee negligently caused damage to the structure of the mine, an act that could be unreasonable irrespective of who committed it and could foreseeably cause injury to any person who might possibly be in the vicinity.

*Id.*

Here, in contrast, Galvez' cause of action can be evaluated without interpreting the CBA because the acts alleged would violate state law irrespective of the identity of the wrongdoer or of his victim. They are claims alleging violation of a duty owed to all citizens. *Cf. Franchise Tax Bd. of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 25 n. 28, 103 S.Ct. 2841, 2854 n. 28, 77 L.Ed.2d 420 (1983) (remarking that "a state battery suit growing out of a violent strike would not arise under § 301 simply because the strike may have been a violation of an employer-union contract").

A number of cases support a finding of non-preemption. The issue in *Lingle* was "whether an employee covered by a collective-bargaining agreement that provides her with a contractual remedy for discharge without just cause may enforce her state law remedy for retaliatory discharge." *Lingle*, 486 U.S. at 401, 108 S.Ct. at 1879. Reversing the court of appeals' finding of preemption, the Court noted that the elements constituting retaliatory discharge under Illinois law

> pertain[ ] to the conduct of the employee and the conduct and motivation of the

6. Appellees point to the CBA provision stating in pertinent part:
 It is the intent of the parties that no employee shall be required to work under conditions which are unsafe or unhealthy, and that an employee who believes that he is being so required shall have the right to notify his foreperson of such condition which the foreperson shall investigate immediately.... If the issue is not resolved, the employee shall have the right to present a grievance to the Department Head.

employer.... To defend against a retaliatory discharge claim, an employer must show that it had a nonretaliatory reason for the discharge ...; this purely factual inquiry does not turn on the meaning of any provision of a collective-bargaining agreement.

*Id.* at 407, 108 S.Ct. at 1882.

Analogously, the question in this case is simply a factual issue and one of intent: (1) did Cook commit a violent injury on Galvez and/or did Galvez apprehend such harmful contact, and (2) were these actions motivated by Cook's desire to injure his subordinate? *See* 5 *B.E. Witkin, Summary of California Law* §§ 346–348 (9th ed. 1988) (hereinafter *Witkin*). Interpretation of the CBA can hardly help resolve these factual questions. *See, e.g., Eldridge v. Felec Services, Inc.,* 920 F.2d 1434, 1439 (9th Cir. 1990) (where "the motive of the employer is the primary consideration[, i]t may be determined without reference to any term of the collective bargaining agreement.").

In this Circuit, *Gulden v. Crown Zellerbach Corp.,* 890 F.2d 195 (9th Cir.1989), *Miller v. AT & T Network Systems,* 850 F.2d 543, 546 (9th Cir.1988), and *Paige v. Henry J. Kaiser Co.,* 826 F.2d 857 (9th Cir.1987), *cert. denied,* 486 U.S. 1054, 108 S.Ct. 2819, 100 L.Ed.2d 921 (1988), provide further and compelling authority. In all three cases, claims based on hazardous work conditions which might have been construed as embraced by the work assignment or safety provisions of the CBAs were held not to be preempted because "[n]one of the[ ] elements [of proof] depends upon an interpretation" of the agreements. *Gulden,* 890 F.2d at 199.[7]

■ As for appellees' argument that preemption is mandated because of Galvez' claim that the offensive conduct was motivated by a desire to find a reason to fire him, it was confronted by the Seventh Circuit and promptly rejected. *See Keehr v. Consolidated Freightways of Delaware, Inc.,* 825 F.2d 133, 135–37 (7th Cir.1987). Not unlike Galvez, Keehr claimed that the purpose of his supervisors' vulgar remarks was "to provoke [the employee] to throw a punch at a supervisor in order to give the company a basis to discharge the employee." 825 F.2d at 135. This tenuous connection to the CBA's discharge provisions

---

7. The plaintiff in *Gulden* was ordered to clean a polychlorinated biphenyls (PCB) spill without protective gear. He brought a suit, claiming that Oregon law provided him with the right to be warned of the safety risks involved. *Gulden,* 890 F.2d at 198–99. The Ninth Circuit reversed the district court's finding of preemption despite the CBA's job assignment provisions, concluding that his claim "rests upon state law." *Id.* at 198. *Paige* involved allegations that employees had been forced to fill generators with gasoline under unsafe conditions. Among the employees' causes of action was one for assault. 826 F.2d at 859–60. The court found the action "not based in any way upon the collective-bargaining agreement ... but ... upon activity which is alleged to violate" independent California safety provisions. *Id.* at 866. Finally, *Miller* was assigned to work in an area where temperatures ran high, despite the known fact that his heart could not support such conditions. *Miller,* 850 F.2d at 545. Having once lost consciousness, he refused to return to work and was subsequently fired. The court found that Miller's discrimination claim was not preempted, even though the CBA covered work assignments, transfers and discharges, *id.* at 545, because Oregon's discrimination statutes "are independent of any standard of reasonable treatment set forth in the CBA." *Id.* at 549. Of California's assault and battery provisions, we can say exactly the same.

From the Eighth Circuit comes further support. In *Hanks v. General Motors Corp.,* 906 F.2d 341 (8th Cir.1990), plaintiff Hanks brought a suit against her employer who had placed her under the supervision of a person who had sexually assaulted Hanks' daughter. After Hanks failed to return to work, GM notified her that it considered that she had quit her employment. *Id.* at 342. Alleging outrageous conduct on GM's part, Hanks filed an action in state court, despite the existence of CBA provisions governing leaves of absence, work assignments and discharge. *Id.* GM removed and moved for summary judgment on preemption grounds. Like defendants in this case, GM argued that its actions were in compliance with the CBA. In reversing the district court's finding of preemption, the court of appeals noted that the duties owed by GM to Hanks were "duties owed by GM to every member of society, not just to employees covered by the collective bargaining agreement." *Hanks,* 906 F.2d at 344. The reasoning set forth in *Hanks* is equally valid in this case: Cook allegedly violated a duty owed each and every member of society; Galvez asks for damages resulting from his violation of such a duty.

was not sufficient to preempt Keehr's claims; the alleged abusive conduct on its own was the basis of the tort claim. *See id.* at 137–38.

Of course, reaching this conclusion says nothing about the merits of Galvez' claim. But whether or not defendants' actions amount to assault and battery is irrelevant to this inquiry. Simply, a court should not prejudge the parameters of California's assault and battery law and then, on the basis of that guess, prevent the state court from determining whether Cook's actions constituted assault and battery.

### 2.

■ We turn next to Galvez' claim of intentional infliction of emotional distress for which, under California law, he must show "(1) outrageous conduct by the defendant, (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress, (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Trerice v. Blue Cross of California,* 209 Cal. App.3d 878, 883, 257 Cal.Rptr. 338 (1st Dist.1989); *see also Newberry v. Pacific Racing Ass'n,* 854 F.2d 1142, 1150 (9th Cir.1988); *Kiseskey v. Carpenters' Trust for So. California,* 144 Cal.App.3d 222, 229, 192 Cal.Rptr. 492 (2d Dist.1983). "Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Newberry,* 854 F.2d at 1150 (citing *Cervantez v. J.C. Penney Co.,* 24 Cal.3d 579, 593, 156 Cal.Rptr. 198, 595 P.2d 975 (1979)).

In general, this Circuit has been particularly receptive to preemption claims in this context. *See, e.g., Cook v. Lindsay Olive Growers,* 911 F.2d 233, 239–40 (9th Cir. 1990); *Harris,* 897 F.2d at 403; *Newberry,* 854 F.2d at 1149–50; *Miller,* 850 F.2d at 550–51; *Truex v. Garrett Freightlines, Inc.,* 784 F.2d 1347 (9th Cir.1985); *Olguin v. Inspiration Consolidated Copper Co.,*

740 F.2d 1468 (9th Cir.1984). *But see Tellez v. Pacific Gas & Elec. Co.,* 817 F.2d 536 (9th Cir.), *cert. denied,* 484 U.S. 908, 108 S.Ct. 251, 98 L.Ed.2d 209 (1987). Others, less so. *See, e.g., Hanks,* 906 F.2d at 344; *Keehr,* 825 F.2d at 137.

At first glance, Galvez' claim appears to be preempted. Indeed, in cases involving a showing of outrageous behavior, "the terms of the CBA can become relevant in evaluating whether the defendant's behavior" reached the requisite level. *Miller,* 850 F.2d at 550. "Actions that the collective bargaining agreement permits might be deemed reasonable in virtue of the fact that the CBA permits them." *Id.* According to this view, preemption is necessary because a determination of outrageousness might "depend[ ] on the relationship between plaintiff and defendant." *Id.* at 551; *see Alcorn v. Anbro Engineering, Inc.,* 2 Cal.3d 493, 498 & n. 2, 86 Cal.Rptr. 88, 468 P.2d 216 (1970) (noting the "significance of the relationship between the parties in determining whether liability should be imposed" in a suit for intentional infliction of emotional distress).

That the assault and battery claim is not preempted is, under this perspective, not dispositive. The employer's behavior might be impermissible under independent state law but, if permitted under the CBA, it might nonetheless fall short of being "outrageous." *See Cook,* 911 F.2d 233 (plaintiff's claim alleging discriminatory discharge was not preempted; accompanying claim alleging emotional distress on same facts was); *Miller,* 850 F.2d at 550 (plaintiff's claim alleging discrimination is not preempted; emotional distress claim arising out of same conduct is).

Upon closer scrutiny, however, distinctions between these cases and our own come into focus. Most significant is the fact that while collective bargaining agreements almost certainly address potential discharges, no CBA—in any event not this one—contemplates appellees' alleged behavior. *See Tellez,* 817 F.2d at 539 (finding plaintiff's claim of intentional infliction of

emotional distress as the result of the employer's distribution of a defamatory letter not preempted, noting that "[t]he collective bargaining agreement does not envision such behavior"); *see also Miller,* 850 F.2d at 550 n. 5 (finding preemption but distinguishing *Tellez* on this ground); *Hanks,* 906 F.2d at 344 n. 5 (finding no preemption and distinguishing *Newberry* on this basis).

Clearly, the agreement did not specify in what circumstances assault and battery might be permitted. Unlike defendants in *Miller* or *Cook,* defendants in this case cannot contend that, even though they might have violated an independent state law, they complied with the terms of the CBA in committing the offenses alleged by the plaintiff. Compliance with the CBA, in sum, cannot temper the potential outrageousness of the conduct.

With regard to the emotional distress flowing from the alleged offensive language, *Keehr,* 825 F.2d at 133, a case remarkably similar to our own, provides powerful support for this position. There, plaintiff brought a suit against his employer, alleging intentional infliction of emotional harm stemming from his supervisor's use of racially derogatory language. Holding that plaintiff's claim was not preempted, the court emphasized that "the employee is claiming that his emotional distress resulted from abusive statements made to him by his supervisor; he does not seek any damages flowing from his discharge.... [T]he employee's claim revolved around conduct by his employer that is not even arguably sanctioned by the labor contract." *Id.* at 138 n. 6.

Finally, we note that in this case appellees' alleged assault and battery is made criminal by state law. *See* 5 *Witkin* § 346 at 436. As noted by the *Miller* court,

> [I]f a plaintiff alleges that an employer's criminal behavior inflicted extreme emotional distress, the emotional distress claim need not be preempted. The behavior could be found sufficiently outrageous to permit recovery without regard to whether the behavior might be permitted under the CBA. Its outrageousness would be clear from the state's decision to make the behavior criminal.

850 F.2d at 550 n. 5. Therefore, we hold that Galvez' claim for intentional infliction of emotional harm is not preempted.

### III.

Having ruled that Galvez' claims are not preempted, we also think it necessary to address some of the concerns raised by this type of case. The preemption doctrine is one that arguably invites subterfuge and circumvention. Artful pleading can metamorphose a work assignment dispute into an independent state tort, a safety complaint into an assault and battery claim. By so pleading, plaintiffs can potentially thwart the purposes of the LMRA.[8] The Chaplinesque allegations of this dispute might trigger precisely such concerns.[9]

Nevertheless, a check on such deception is already in place, and it is not preemption. Rather, it is the state court's ability, at the inception of litigation, to weed out the delusive claims from the genuine. The nub of

**8.** Of course, side-stepping is not only a plaintiffs' specialty. Employers might seek to bypass state law requirements by injecting "invalid defenses to defeat employees' state law claims." *Note, supra,* at 227. If successful, the employer could thus penalize unionized workers by depriving them of state-created remedies. *Cf. Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 756, 105 S.Ct. 2380, 2397, 85 L.Ed.2d 728 (1985) ("It would turn the policy that animated the Wagner Act [National Labor Relations Act] on its head to understand it to have penalized workers who have chosen to join a union by preventing them from benefiting from state labor regulations imposing minimal standards on nonunion employers.").

**9.** Indeed, the facts alleged by Galvez irresistibly evoke a memorable scene from Charles Chaplin's *Modern Times* in which the hero is assaulted by modern technology, driven to lunacy by the conveyor belt's ever-accelerating pace. There are two significant nuances in this case, however: First, the accelerated pace was purportedly directed at a particular victim; second, far from being silent, the scene allegedly was replete with racial epithets.

the matter is this: On the face of a complaint such as appellant's, we are dealing with purported acts—assault and battery—that, if true, are the state's province, *not* the CBA's. If, on the other hand, plaintiff's allegations turn out to be devoid of substance—and we do not mean to suggest that they are—we are confident that California's courts will promptly dispose of them. Either appellant can make out a claim for assault and battery, or he cannot. In both cases, and pursuant to *Lingle* and *Allis–Chalmers*, the judicial responsibility simply is not ours.

We realize as well that Galvez *could have* submitted a grievance under the CBA—presumably for unsafe work conditions—based on the same facts. Though one might argue that to choose state court litigation over collective bargaining is in some sense to frustrate federal objectives, the Supreme Court has settled this question. As it noted in *Caterpillar*, "It is true that respondents ... possessed substantial rights under the collective bargaining agreement, and could have brought suit under § 301. As masters of the complaint, however, they chose not to do so." In short, the existence of a remedy under the CBA "makes no difference." *Ackerman*, 860 F.2d at 1517; *see also Lingle*, 486 U.S. at 413, 108 S.Ct. at 1885; *Miller*, 850 F.2d at 546.

## CONCLUSION

Galvez' claims are not based on the collective bargaining agreement, do not require its interpretation, and can be proven without referring to it. Therefore, they are not preempted by section 301. Because there is no preemption, the case should not have been removed and the district court improperly exercised jurisdiction. Accordingly, the district court's judgment is vacated. The action is remanded to the district court with instructions to remand to the state court from which it was removed.[10]

VACATED and REMANDED.

---

**10.** In light of our holding, we cannot address appellees' alternative arguments regarding the statute of limitations, exhaustion, preemption by California's Workers' Compensation Act, or failure to state a claim.