United States Court of Appeals,

Eleventh Circuit.

No. 94-8413.

Jesse J. LIGHTNING, Plaintiff-Appellee,

v.

ROADWAY EXPRESS, INC., Defendant-Appellant.

Aug. 16, 1995.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:91-00585-CV-JOF), J. Owen Forrester, Judge.

Before HATCHETT and EDMONDSON, Circuit Judges, and GIBSON[*], Senior Circuit Judge.

HATCHETT, Circuit Judge:

The principal issue we discuss in this appeal is whether the appellee's claim for intentional infliction of emotional distress, a Georgia state law claim, is preempted under section 301 of the Labor Management Relations Act. We affirm the district court's ruling that the claim is not preempted.

I. FACTS

The district court made the findings of fact stated herein after conducting a bench trial on appellee Jesse Lightning's claims against his former employer, appellant Roadway Express, Inc. (Roadway).

Lightning worked as a janitor for Roadway, a trucking company, in its Atlanta terminal from February 1988 until his discharge in August 1990. Although Lightning initially served as an on-call employee, he eventually received regular employee status. The

[*]Honorable John R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

International Brotherhood of Teamsters, Local Union No. 728 (the Union) represents regular, non-management employees at Roadway's Atlanta terminal. The collective-bargaining agreement between Roadway and the Union allows for progressive discipline, but it also grants employees the right to grieve any discipline imposed upon them.

Lightning liked his job and earnestly tried to please his superiors. He worked slowly, however, and his job performance was marginal. In attempting to document Lightning's poor work performance, Roadway supervisors photographed him from time to time. Roadway management counseled or disciplined Lightning several times for violating the collective-bargaining agreement and company rules. These violations included wasting time, failing to follow instructions, and failing to wear steel-toed shoes. Due to these work-rule violations, Roadway discharged Lightning several times following the progressive discipline process. Until August 1990, Roadway reinstated Lightning after each discharge.

Roadway supervisors subjected Lightning to verbal abuse on numerous occasions. For example, Roadway supervisors Mitchell Lilly and Darrell Poole stood over Lightning while he cleaned under a truck, and, in the presence of other employees, one of the supervisors stated, "Look at that piece of shit down there." On another occasion, supervisor Buddy Looney called Lightning into his office and stated, "We pay you really good for the shit you do, which is nothing. We hate you. You don't belong here." Another supervisor told Lightning, "I don't know why you stay here; none of the managers like you." Poole told Lightning that the company

needed to "get rid of his ass."  He also called Lightning a "sorry son of a bitch" and told Lighting he did not know why Roadway had hired him.  Lilly and another supervisor told Lightning to quit. Lightning also received phone calls at home telling him to resign.

Lightning endured two incidents where Roadway supervisors acted even more egregiously.  One confrontation commenced when supervisor Ike Franz told Lightning with regard to his sweeping: "We pay you to do this?"  Lightning responded that he could perform Franz and Poole's jobs better than those two men.  A few minutes later, Poole arrived with other supervisors and, with his face six inches away from Lightning's, spoke to Lighting in a loud, insulting manner.  Poole spat on Lightning.  He also stated, "Who do you think you are?" and "You ain't no better than a janitor."

On another occasion, Lightning told management employees that Mark Keahon was the only supervisor who treated him with decency. The following day, Keahon called Lightning into an office and criticized him about work he had performed.  As the conversation progressed, Lightning requested the presence of a union steward. Keahon responded, "Fuck the union steward.  Get your sorry ass out of here."  Lightning returned with a union steward and, during the heated conversation that ensued, Keahon tried to hit Lightning.

Toward the end of his employment, Lightning suffered from a psychotic episode which included manifestations of paranoid delusions.  This episode occurred on an evening when managers had "chewed out" Lightning on three separate occasions.  Lightning was hospitalized and received treatment at the Georgia Mental Health Institute (GMHI) and another mental health facility.  The causes

for this episode were work-related, though other stressors contributed to Lightning's condition. According to Lightning's mother, he had not suffered previously from any mental problems or disorders. Although Roadway officials had knowledge that Lightning had been admitted to GMHI, they took no action to learn about his condition or to investigate its cause. While Lightning was hospitalized, Roadway sent him a registered letter documenting a prior verbal counseling regarding his failure to wear steel-toed shoes.

After Roadway had discharged Lightning in August 1990, supervisor Fred Dominick left a message on Lightning's telephone answering machine stating, in essence, "Hey, we understand you want your job back here at Roadway." A great deal of laughter from others accompanied Dominick's voice on the message.

A former Roadway supervisor, Timothy Marshall, stated that Looney said he was going to get Lightning if it was the last thing he did. Marshall also stated that when Roadway management had difficulty getting rid of an unwanted employee, they undertook a strategy to have that employee "written up" as much as possible. Managers sought to provoke and demean the employee, and otherwise try to persuade the employee to quit. These efforts were known as "mad-dogging." Ronnie Henson, a Roadway employee for over twenty-five years and an experienced union steward, characterized management's treatment of Lightning as "severe" and stated that he had never seen a worker similarly treated.

## II. PROCEDURAL HISTORY

In February 1991, Lightning brought this lawsuit against

Roadway in state court in Georgia alleging breach of contract stemming from violations of the collective-bargaining agreement, intentional infliction of emotional distress, and assault. Roadway removed the action to the United States District Court for the Northern District of Georgia.

In August 1991, Roadway moved for summary judgment, arguing that: (1) federal labor law preempted Lightning's breach of contract claim; (2) federal labor law preempted Lightning's intentional infliction of emotional distress claim; (3) Roadway's alleged conduct did not constitute intentional infliction of emotional distress as a matter of law; and (4) the Georgia Workers' Compensation Act provided the exclusive remedy for Lightning's assault claim. In March 1992, the district court granted in part and denied in part Roadway's motion. The district court found that federal labor law preempted Lightning's contract claim, but otherwise denied Roadway's motion.

After conducting a non-jury trial on Lightning's remaining claims in August 1993, the district court entered judgment for Lightning. The court awarded $33,720 in damages for intentional infliction of emotional distress ($25,000 for pain and suffering and $8,720 in medical expenses), nominal damages for assault, and $100,000 in punitive damages. This appeal followed.

## III. CONTENTIONS

Roadway contends that the resolution of Lightning's intentional infliction of emotional distress claim depends upon interpretation of the collective-bargaining agreement, and thus section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C.

§ 185, preempts that claim. Roadway also argues that Lightning has failed to allege conduct sufficient to support an intentional infliction of emotional distress claim under Georgia law. The company also asserts that the district court clearly erred in finding that Keahon assaulted Lightning. Additionally, Roadway contends that the Georgia Workers' Compensation Act provides the exclusive remedy for Lightning's injury. Finally, Roadway argues that the district court's award of punitive damages was excessive as a matter of law.

Lightning responds to Roadway's contentions as follows. First, the resolution of his intentional infliction of emotional distress claim does not require an interpretation of the labor contract, and thus section 301 of the LMRA does not preempt that claim. Second, Roadway's actions were extreme and outrageous and therefore sufficient to establish a claim for intentional infliction of emotional distress under Georgia law. Third, substantial evidence existed for the district court to find that Keahon assaulted Lightning. Fourth, Lightning's emotional distress does not constitute a compensable "injury" under the Georgia Workers' Compensation Act. Finally, the district court's award of punitive damages was reasonable.

## IV. DISCUSSION

A. Section 301 Preemption and the Intentional Infliction of Emotional Distress Claim

Whether section 301 of the LMRA preempts a state-law claim constitutes a question of law subject to *de novo* review. *See Galvez v. Kuhn,* 933 F.2d 773, 776 (9th Cir.1991).

Section 301(a) of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Section 301 not only grants federal courts jurisdiction over employment disputes involving collective-bargaining agreements, but also expresses a federal policy "that the substantive law to apply in suits under § 301(a) is federal law which the courts must fashion from the policy of our national labor laws." *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 456, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957).

In *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), the Supreme Court reiterated the principles of the section 301 preemption doctrine:

> [I]f the resolution of a state-law claim depends upon the meaning of a collective bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles—necessarily uniform throughout the nation—must be employed to resolve the dispute.

*Lingle,* 486 U.S. at 405-06, 108 S.Ct. at 1881; *see also Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985) (preemption is justified when the "evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract"). The preemption doctrine "ensure[s] uniform interpretation of collective-bargaining agreements, and thus ... promote[s] the peaceable, consistent resolution of labor-management disputes." *Lingle,* 486 U.S. at 404, 108 S.Ct. at 1880. Therefore, "§ 301 pre-emption merely ensures that federal law will be the basis for interpreting

collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements." *Lingle,* 486 U.S. at 409, 108 S.Ct. at 1883. Indeed, " "not every dispute ... tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301[.]' " *Lingle,* 486 U.S. at 413 n. 12, 108 S.Ct. at 1885 n. 12 (quoting *Lueck,* 471 U.S. at 211, 105 S.Ct. at 1911).

In determining whether Lightning's state tort law claim for intentional infliction of emotional distress requires interpretation of the terms of the collective-bargaining agreement, we first look to the elements of the state-law claim. *See Lingle,* 486 U.S. at 406-07, 108 S.Ct. at 1881-82. To succeed on a claim for intentional infliction of emotional distress in Georgia, a plaintiff must show: (1) the defendant's conduct was extreme and outrageous; (2) the defendant acted intentionally or recklessly; (3) the defendant's conduct caused emotional distress; and (4) the resulting emotional distress was severe. *Yarbray v. Southern Bell Tel. & Tel. Co.,* 261 Ga. 703, 409 S.E.2d 835, 837 (1991).

Roadway contends that Lightning's claim is inextricably intertwined with the collective-bargaining agreement and thus preempted by section 301. Specifically, the company argues that this court must interpret the labor contract in order to assess the reasonableness of Roadway's conduct. We agree that an "analysis of an employee's intentional infliction of emotional distress claim may well require a court to refer to and interpret the contract provisions governing the terms and conditions of her employment."

*Douglas v. American Info. Technologies Corp.,* 877 F.2d 565, 571 (7th Cir.1989). Nonetheless, "the "extreme and outrageous' character of certain sorts of employer conduct may be evident without reference to the terms of a collective bargaining agreement...." *Douglas,* 877 F.2d at 571. This is such a case.

Contrary to Roadway's assertions, Lightning's intentional infliction of emotional distress claim does not concern the terms and conditions of his employment, but rather the severe abuse he endured from Roadway's supervisors.[**] As outlined above, Roadway management verbally abused Lightning on several occasions. Moreover, supervisor Poole spat on Lightning, and supervisor Keahon assaulted him. Thus, Lightning's claim "revolve[s] around conduct by his employer that is not even arguably sanctioned by the labor contract." *Keehr v. Consolidated Freightways of Del., Inc.,* 825 F.2d 133, 138 n. 6 (7th Cir.1987). As a result, the resolution of Lightning's tort claim does not implicate the provisions of the

---

[**]All of the cases that Roadway cites in support of its preemption argument involved controversies relating to the terms and conditions of employment and thus required interpretation of the relevant collective-bargaining agreements. *See McCormick v. AT & T Technologies, Inc.,* 934 F.2d 531, 534-37 (4th Cir.1991), *cert. denied,* 502 U.S. 1048, 112 S.Ct. 912, 116 L.Ed.2d 813 (1992); *Cook v. Lindsay Olive Growers,* 911 F.2d 233, 239-40 (9th Cir.1990); *Douglas,* 877 F.2d at 569-573; *Chmiel v. Beverly Wilshire Hotel Co.,* 873 F.2d 1283, 1285-1286 (9th Cir.1989); *Newberry v. Pacific Racing Ass'n,* 854 F.2d 1142, 1148-50 (9th Cir.1988); *Miller v. AT & T Network Systems,* 850 F.2d 543, 550-51 (9th Cir.1988); *Young v. Anthony's Fish Grottos, Inc.,* 830 F.2d 993, 996, 1002 (9th Cir.1987); *Truex v. Garrett Freightlines, Inc.,* 784 F.2d 1347, 1350-52 (9th Cir.1985); *Choate v. Louisville & Nashville R.R. Co.,* 715 F.2d 369, 370-72 (7th Cir.1983). Accordingly, we do not find these authorities persuasive as applied to the facts in this case. We remain mindful that "[t]he full scope of the pre-emptive effect of federal labor-contract law [is] to be fleshed out on a case-by-case basis." *Lueck,* 471 U.S. at 220, 105 S.Ct. at 1915.

collective-bargaining agreement.  *See Knafel v. Pepsi-Cola Bottlers of Akron, Inc.,* 899 F.2d 1473, 1483 (6th Cir.1990) ("Knafel's alleged emotional distress was ... of the abuse she claims to have endured while employed.  This tort claim ... does not require an interpretation of the labor contract.").  Therefore, section 301 does not preempt Lightning's intentional infliction of emotional distress claim.

## B. Judgment on the Intentional Infliction of Emotional Distress Claim

Roadway asserts that the district court erred in finding that the company's conduct was sufficiently outrageous to support a claim for intentional infliction of emotional distress under Georgia law.  "Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law."  *Yarbray,* 409 S.E.2d at 838.

As stated above, in order to prevail in Georgia on a claim of intentional infliction of emotional distress, a plaintiff must establish that:  (1) the defendant's conduct was extreme and outrageous;  (2) the defendant acted intentionally or recklessly;  (3) the defendant's conduct caused emotional distress;  and (4) the resulting emotional distress was severe.  *Yarbray,* 409 S.E.2d at 837.  In order to sustain this cause of action, the defendant's conduct, in light of the totality of the circumstances, "must have been so terrifying or insulting as naturally to humiliate, embarrass or frighten the plaintiff."  *Moses v. Prudential Ins. Co.,* 187 Ga.App. 222, 369 S.E.2d 541, 542-44 (1988).  Moreover, "the existence of a special relationship in which one person has

control over another, as in the employer-employee relationship, may produce a character of outrageousness that otherwise might not exist." *Bridges v. Winn-Dixie Atlanta, Inc.,* 176 Ga.App. 227, 335 S.E.2d 445, 448 (1985). In fact,

> [t]he workplace is not a free zone in which the duty not to engage in willfully and wantonly causing emotional distress through the use of abusive or obscene language does not exist. Actually, by its very nature, it provides an environment more prone to such occurrences because it provides a captive victim who may fear reprisal for complaining, so that the injury is exacerbated by repetition, and it presents a hierarchy of structured relationships which cannot easily be avoided. The opportunity for commission of the tort is more frequently presented in the workplace....

*Coleman v. Housing Auth. of Americus,* 191 Ga.App. 166, 381 S.E.2d 303, 306 (1989).

We conclude, considering the totality of the circumstances, that the district court properly granted judgment for Lightning on his intentional infliction of emotional distress claim. We note that Georgia courts have upheld awards under this theory for conduct far less outrageous than Roadway's. *See, e.g., Anderson v. Chatham,* 190 Ga.App. 559, 379 S.E.2d 793, 799-800 (1989).

C. Findings of Fact on the Assault Claim

Roadway also alleges that the district court erred in finding that Lightning "reasonably apprehended that he would be struck by Mr. Keahon." This court "will hold a finding of fact clearly erroneous if the record lacks substantial evidence to support it." *Thelma C. Raley, Inc. v. Kleppe,* 867 F.2d 1326, 1328 (11th Cir.1989).

The record possesses substantial evidence to support the district court's finding on this issue. Lightning testified that Keahon "jumped up and tried to hit me." The district court found

Lightning credible and was not troubled by Lightning's failure to mention Keahon's attempt to hit him when reporting the confrontation to a colleague. Keahon did not testify at trial, and the district court (reasonably, we believe) drew a negative inference from his failure to do so. Two people present in the room during the incident testified that Keahon did not attempt to strike Lightning. The district court, however, found one of those men, Roy Sweatman, "wholly uncredible." Warren Wilhoite, a witness not present in the room during the incident, testified that no one threw a punch during the encounter. The district court found that "it was difficult ... to believe that [Wilhoite] could have observed everything." Wilhoite also testified that Scott Heard restrained Keahon during the incident, a fact that tends to support Lightning's version of events. In sum, the district court did not clearly err in finding that Keahon assaulted Lightning.

D. Applicability of the Georgia Workers' Compensation Act

Roadway next contends that the Georgia Workers' Compensation Act (the Act) provides the exclusive remedy for any injury Lightning suffered as a result of Roadway's intentional infliction of emotional distress and assault. Accordingly, Roadway argues, the district court should not have entertained Lightning's tort claims.

The Act states, in relevant part, that "[t]he rights and the remedies granted to an employee by this chapter shall exclude all other rights and remedies of such employee ... at common law or otherwise, on account of ... injury." O.C.G.A. § 34-9-11(a) (1992). The Act provides the following definition of injury: "

"Injury' or "personal injury' means only injury by accident arising out of and in the course of the employment...."  O.C.G.A. § 34-9-1(4) (1992 & 1994 Supp.).  Georgia courts have consistently held that "psychic trauma precipitated by psychic stimulus" (as opposed to physical injury) does not constitute an "injury" under the Act. *Hanson Buick Inc. v. Chatham,* 163 Ga.App. 127, 292 S.E.2d 428, 428-30 (1982);  *see also Oliver v. Wal-Mart Stores, Inc.,* 209 Ga.App. 703, 434 S.E.2d 500, 500-01 (1993);  *W.W. Fowler Oil Co. v. Hamby,* 192 Ga.App. 422, 385 S.E.2d 106, 106-07 (1989).  Consequently, Roadway's claim that the Act provides the exclusive means for Lightning's remedy lacks merit.

E. Propriety of the Punitive Damages Award

Finally, Roadway argues that the district court's award of punitive damages was excessive as a matter of law.  Under Georgia law, "[p]unitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b) (1982 & 1994 Supp.). Moreover, "[p]unitive damages shall be awarded not as compensation to a plaintiff but solely to punish, penalize, or deter a defendant." O.C.G.A. § 51-12-5.1(c) (1982 & 1994 Supp.).  The district court found that "punitive damages are justified on the facts and are necessary to deter future wrongdoing."

In determining the reasonableness of an award of punitive damages, courts should consider whether:  (1) the misconduct caused

personal injury or merely damage to property; (2) the actor's misconduct was active or passive; and (3) a rational relationship exists between the misconduct and the amount of the award. *See Colonial Pipeline Co. v. Brown,* 258 Ga. 115, 365 S.E.2d 827, 833 (plurality opinion), *appeal dismissed,* 488 U.S. 805, 109 S.Ct. 36, 102 L.Ed.2d 15 (1988). Applying these factors, we conclude that the district court's award of $100,000 was reasonable. The active misconduct of Roadway's supervisors caused Lightning to suffer a mental disorder that required his hospitalization. Moreover, given Roadway's egregious conduct, and the actual damages that Lightning endured, we conclude that a rational relationship exists between the misconduct at issue and the amount of the award. Accordingly, we reject Roadway's contention that the district court's punitive damages award was excessive.

## V. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**