LOCAL 36, SHEET METAL WORKERS
INTERNATIONAL ASSOCIATION,
AFL–CIO, Plaintiff,

v.

T.J. KIRKWOOD AND SON, INC.; Thomas Kirkwood; and Janet Kirkwood, Defendants/Counterclaim–Plaintiffs,

v.

LOCAL 36, SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, AFL–CIO, Counterclaim–Defendant,

and

The Sheet Metal and Air Conditioning Contractor's Association of St. Louis, d/b/a St. Louis Chapter, Sheet Metal and Air Conditioning Contractor's National Assn., Counterclaim–Defendant,

and

A.T. Zlotopolski and David C. Zimmerman, individually and as agents of Plaintiff and/or the Local Joint Adjustment Board, Counterclaim–Defendants,

and

Raymond Grossman and Joan Barton, individually and as agents of Sheet Metal and Air Conditioning Contractor's National Association and/or the Local Joint Adjustment Board, Counterclaim–Defendants,

and

Edward Hallam, individually and as an agent of Plaintiff, Counterclaim–Defendant.

No. 4:93CV1639SNL.

United States District Court,
E.D. Missouri,
Eastern Division.

Jan. 16, 1996.

Arthur J. Martin, Charles A. Werner, Schuchat and Cook, St. Louis, MO, and Ira M. Berkowitz, Clayton, MO, for Local 36 Sheet Metal Workers' International Association.

David F. Yates, Stephen Duane Smith, and Stephen B. Higgins, Thompson and Mitchell, St. Louis, MO, for T.J. Kirkwood and Sons, Inc.

David F. Yates, Stephen Duane Smith, Stephen B. Higgins and Kelly M. Brown, Thompson and Mitchell, St. Louis, MO, for Thomas Kirkwood and Janet A. Kirkwood.

Arthur J. Martin and Charles A. Werner, Schuchat and Cook, St. Louis, MO, for A.T. Zlotopolski and David C. Zimmermann.

Ira M. Berkowitz, Clayton, MO, for the Sheet Metal and Air Conditioning Contractor's Association of St. Louis and Edward Hallam.

Roger Edgar, Greensfelder and Hemker, St. Louis, MO, for Raymond Grossman.

Lawrence P. Kaplan, Mark W. Weisman, Gallop and Johnson, St. Louis, MO, and Helmut Starr, Suelthaus and Kaplan, St. Louis, MO, for Joan Barton.

### *MEMORANDUM*

LIMBAUGH, District Judge.

The plaintiff Union–Local 36 filed this two-count action seeking enforcement of an arbitration award against corporate defendant T.J. Kirkwood and Son, Inc. (Count I), and an accounting of corporate assets against the individual defendants Tom and Janet Kirkwood, as owners of T.J. Kirkwood and Son, Inc. (Count II). Defendants have counterclaimed against the plaintiff Union–Local 36, as well as the local employer association and officers/members of the Union–Local 36, alleging federal anti-trust violations and various state-law torts. This matter is before the Court on the plaintiff Union–Local 36's motion for summary judgment on defendants' counterclaims (# 57) and motion to stay proceedings regarding Count II (# 68); and individual defendants Tom and Janet Kirkwood's motion for summary judgment on Counts I and II (# 66). Extensive responsive pleadings have been filed by all interested parties. This case is set for trial on the Court's trial docket of January 16, 1996.

Plaintiff seeks enforcement of an arbitrator's award and an accounting of the corporate defendant's business assets. The defendants/counterclaim-plaintiffs (hereinafter the corporate defendant T.J. Kirkwood and Son, Inc. will be referred to as "the Company" and the individual defendants Tom and Janet Kirkwood will be referred to as "the Kirkwoods") have filed an amended five-count counterclaim as follows:

*Count I*—alleges that Local 36 and its officers/members tortiously interfered with the Company's sale of assets to Lee Mechanical by filing and litigating a "meritless" grievance before the Local Joint Adjustment Board.

*Count II*—alleges that Local 36 and its officers/members tortiously interfered with Tom Kirkwood's employment by Lee Mechanical by filing and litigating a "meritless" grievance before the Local Joint Adjustment Board.

*Count III*—alleges that Local 36 and its officers/members intentionally inflicted emotional distress upon the Kirkwoods by filing and litigating the "meritless" grievance before the Local Joint Adjustment Board; and by harassing them by engaging in otherwise "outrageous conduct".

*Count IV*—alleges that Local 36, its officers/members and the SMACNA–St. Louis [1] violated federal anti-trust laws by illegally conspiring to destroy the defendants' business and property by filing and litigating a "meritless" grievance before the Local Joint Adjustment Board.

*Count V*—alleges that Local 36 and SMACNA–St. Louis violated federal anti-trust laws by illegally conspiring to restrain trade by filing and litigating a "meritless" grievance before the Local Joint Adjustment Board.

The Kirkwoods, pursuant to their summary judgment motion, further contend that the arbitration award does not run against them individually, that it has not been reduced to a judgment, and that the proceeds received by the Kirkwoods for the sale of the assets of the Company were properly used to pay off the Company's creditors. They contend that they are entitled to judgment as a matter of law on both counts of the plaintiff's complaint to the extent that these counts are directed against them in their individual capacities, or otherwise seek to impose personal liability on them.

■ Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null,* 554 F.2d 896, 901 (8th Cir.1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *Mt. Pleasant v. Associated Elec. Co-op. Inc.,* 838 F.2d 268, 273 (8th Cir.1988).

Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. *Mt. Pleasant,* 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler,* 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.,* 541 F.2d 207, 210 (8th Cir.1976). With these principles in mind, the Court turns to an examination of the facts.

1. SMACNA–St. Louis is the acronym for (former) counterclaim-defendant Sheet Metal and Air Conditioning Contractor's National Association, St. Louis Chapter.

Plaintiff/Counterclaim–Defendant Local 36 is a labor union and a voluntary unincorporated association that represents workers engaged in the production, fabrication, and installation of sheet metal products in the commercial and residential construction industry in and around metropolitan St. Louis and Eastern Missouri for purposes of collective bargaining on behalf of its members for their wages, benefits, hours and working conditions.

Counterclaim Defendant A.T. Zlotopolski is and at all relevant times served as the elected, full-time principal officer, President, and Business Manager of Local 36.

Counterclaim Defendant David C. Zimmermann is and at all relevant times served as the elected, full-time officer and Business Representative of Local 36.

Counterclaim Defendant Edward Hallam is and at all relevant times was employed as a sheet metal worker and served as a rank and file member of Local 36.

(Former Counterclaim Defendant) SMACNA–St. Louis [2] is an employer association that represents employers in the sheet metal industry in Eastern Missouri for a variety of purposes including collective bargaining with labor unions on behalf of some of its members. During time periods relevant to this cause of action, SMACNA–St. Louis represented certain employer members in negotiating collective bargaining agreements with Local 36 to establish the wages, hours, benefits, and working conditions of their employees.

Defendant/Counterclaim Plaintiff T.J. Kirkwood and Son, Inc. (the Company) is a Missouri corporation in good standing with its principal place of business in Farmington, Missouri. During the relevant time-period, the Company was engaged in business as a sheet metal, heating, ventilating, and air conditioning contractor in Eastern Missouri and the St. Louis metropolitan area.

Defendants/Counterclaim Plaintiffs Tom and Janet Kirkwood were, during the relevant time-period, the sole owners, shareholders, and corporate officers of T.J. Kirkwood and Son, Inc. The Kirkwoods are married and presently are residents and citizens of the State of Indiana.

Local 36 and SMACNA–St. Louis are and at all times relevant to this lawsuit have been parties to a collective bargaining agreement (CBA) governing the wages, hours and working conditions of the employees represented by Local 36 who work for employers represented by SMACNA–St. Louis.

The Company was established in 1976. Tom Kirkwood was a member of SMACNA–St. Louis, and the Company was a party to a series of CBAs between Local 36 and SMACNA–St. Louis; specifically, the Company was a party to the CBA between SMACNA–St. Louis and Local 36 for the period May 1, 1977 through April 30, 1980; May 1, 1980 through April 30, 1983; May 1, 1983 through April 30, 1986; and May 1, 1986 through April 30, 1989.

Under the terms of these CBAs, any grievances of the Employer or the Union arising out of the interpretation and enforcement of the agreement that could not be settled between the parties could be submitted to the Local Joint Adjustment Board (LJAB) for arbitration. The LJAB consisted of an equal number of representatives of the Union and SMACNA–St. Louis. Except for instances of deadlock, all decisions of the LJAB are final and binding. Zlotopolski Affidavit, Attachment C, Article X, Sections 1–7.

The afore-referenced CBAs also provided in Article X, Section 8, that in addition to the settlement of grievances arising out of interpretation and enforcement of the CBA, any controversy or dispute arising out of the failure of the parties to negotiate a renewal of the CBA would be submitted to the National Joint Adjustment Board in Merrifield, Virginia. Article X, Section 8 is commonly referred to as the "interest arbitration clause". T. Kirkwood Deposition, pgs. 54–55. Article X, Section 10 further provides that there may be no work stoppage or strike by the Union pending a decision by the National

---

**2.** On August 2, 1994 defendants/counterclaim-plaintiffs dismissed with prejudice counterclaim defendants Barton and Grossman. (# 50 and

# 51). On August 8, 1994 defendants/counterclaim-plaintiffs dismissed with prejudice counterclaim defendant SMACNA–St. Louis (# 53).

Joint Adjustment Board regarding a dispute over a new CBA and that an unanimous decision by the National Joint Adjustment Board is final and binding upon the parties. Zlotopolski Affidavit, Attachments A & C, Article X, Sections 8 and 10.

Prior to the expiration of the 1986–89 CBA, the Company withdrew its authorization for SMACNA–St. Louis to represent it for purposes of collective bargaining with Local 36.[3] Tom Kirkwood then began to negotiate, on behalf of the Company, its own CBA with Local 36. The parties were unable to agree on a new three-year CBA (ostensibly running from May 1, 1989 through April 30, 1992) and so the Union invoked the interest arbitration clause of Article X, Section 8 of the 1986–89 CBA.

On or about August 1, 1989 the National Joint Adjustment Board issued a unanimous decision directing the Company to execute a new three-year CBA with Local 36 effective May 1, 1989 containing terms identical to those of the 1986–89 CBA except that:

1. The integrity clause would be deleted;

2. Article X, Section 8 would be deleted; and

3. "It, moreover, is not the intent of the NJAB to impose on an unwilling party any non-mandatory subject of bargaining. Therefore, in the event the National Labor Relations Board (NLRB) or any court having jurisdiction over the matter imposed herein; to which an objection has been raised, is not the mandatory subject of bargaining, that the provision shall be deleted. In such event, the parties are directed to enter into negotiations to replace that provision of the contract with a mandatory provision. In the event the parties cannot agree upon a replacement for the disputed section, the NJAB retains jurisdiction to resolve that issue."

Zlotopolski Affidavit; T. Kirkwood Deposition, pgs. 53–54; T. Kirkwood Deposition Exh. 41. Subsequently, the Company and Local 36 became signatories to the 1989–92

CBA with the exceptions noted by the NJAB's decision.

There is no dispute that the Company and Local 36 were bound by the 1989–92 CBA, as amended by the NJAB's exceptions. Prior to the expiration of the 1989–92 CBA, the parties contacted one another to negotiate the terms of a new CBA for the 1992–96 term. On April 2, 1992 Tom Kirkwood wrote Zimmerman stating:

> "To settle our contract we would like to offer to sign the settlement that the Sheet Metal workers and the St. Louis SMACNA chapter settle on except for the following. The only provisions we will not agree to on this contract are the binding arbitration clause and the integrity clause of the contract in any form."

Defendants/Counterclaim–Plaintiffs' Memorandum in Opposition to Plaintiffs/Counterclaim–Defendants' Motion for Summary Judgment (# 62), Exhibit 3. On May 18, 1992 Zimmerman faxed to Tom Kirkwood a tentative CBA proposal. Defendants/Counterclaim–Plaintiffs' Exhibit 4. On June 5, 1992 Local 36 sent to Tom Kirkwood a copy of the agreed-upon 1992–96 CBA between Local 36 and SMACNA–St. Louis along with a request that Tom Kirkwood, on behalf of the Company, sign the Letter of Agreement. Defendants/Counterclaim–Plaintiffs' Exhibit 5. Plaintiffs Kirkwood contend that they agreed to sign the 1992–96 CBA reached between Local 36 and SMACNA–St. Louis with the exception of the entire grievance and arbitration procedure of Article X and the integrity clause. Local 36 contends that an agreement was reached with the Kirkwoods that they would sign the 1992–96 CBA reached between Local 36 and SMACNA–St. Louis with the same two exceptions included in the 1989–92 CBA. However, it is undisputed that Local 36 and the Company never became actual signatories to a new 1992–96 CBA, in any form. However, following notification by Local 36 of the new 1992–96 CBA agreed upon by Local 36 and SMACNA–St. Louis, the Company implemented the wage increases and benefits increases set forth in

---

**3.** The Company withdrew its authorization on November 25, 1988. Deposition of T. Kirkwood, pgs. 36, 46.

the new 1992–96 CBA, and continued to utilize the services of Local 36's hiring hall.

During the summer of 1992 the Kirkwoods suffered continuing severe health problems.[4] They decided to begin the process of closing the business and selling the assets. During the first week of September 1992 Tom Kirkwood began to negotiate the sale of the Company's assets, as well as his future employment, with Ernie Gibson, the chief operating officer for Lee Mechanical. Lee Mechanical is a construction contractor which hires primarily non-union tradesmen to work on various commercial and industrial projects. Tom Kirkwood and Ernie Gibson reached a "handshake deal" regarding the sale of the Company's assets and the employment of Tom Kirkwood by Lee Mechanical. T. Kirkwood Deposition, pgs. 382–385; 396; 444. No written documents evidencing this "handshake deal" were ever signed by either Mr. Gibson or T. Kirkwood. Although the exact details of this "handshake deal" are disputed by Mr. Gibson and T. Kirkwood; it is undisputed that on September 11, 1992 Tom Kirkwood resigned as the CEO and Vice–President of the Company and began his employment with Lee Mechanical as manager of the sheet metal department. T. Kirkwood Deposition, pg. 425. However, he continued to be on the payroll and assist his wife in the daily operation of winding down the business through October 1992. J. Kirkwood Deposition, pg. 413–14; T. Kirkwood Deposition, pgs. 434–38.

At mid-morning, on October 6, 1992, Tom Kirkwood met with Dave Zimmerman. T. Kirkwood Deposition, pg. 475. For the first time, Mr. Kirkwood informed Local 36 of the sale of the Company's assets to Lee Mechanical and of Tom Kirkwood's employment with Lee Mechanical. T. Kirkwood Deposition, pgs. 475–478. That afternoon, Tom Kirkwood submitted the winning bid, on behalf of Lee Mechanical, for the sheet metal work on the Marquette High School project for the Rockwood School District. T. Kirkwood Deposition, pgs. 434; 485–490. At the time of submission of the Marquette High School bid on behalf of Lee Mechanical, Lee Mechanical did not have an adequate shop facility for the job and the Company was still in operation. T. Kirkwood Deposition, pgs. 485–86.

On October 12, 1992 counterclaim-defendant Zimmerman filed, on behalf of Local 36, a grievance against defendant T.J. Kirkwood & Son, Inc. alleging a violation of the 1992–96 CBA which Zimmerman believed existed between Local 36 and the Company. Affidavit of Dave Zimmerman—Attachment A. Zimmerman notified the Kirkwoods of the grievance by letter dated October 15, 1992. Zimmerman Affidavit—Attachment A.[5] The letter informs the Kirkwoods that Local 36 believed that the Kirkwoods had violated several sections of the 1992–96 CBA by improperly utilizing the Company's resources to secure work and transfer work away from Local 36's members employed by the Company to "non-unit" employees of Lee Mechanical. Attached to the letter was a copy of the grievance. The grievance form lists the Article(s) and Section(s) alleged violated as: Article 1, Section 1A; Article 1, Section 2; Article 1, Section 3; Article 1, Section 4A; Article 1, Section 4 c; Article 1, Section 5; Article 1, Section 1; and Article 3, Section 1. Zimmerman Affidavit—Attachment A. The "nature of the grievance" is stated as follows:

Since on or about October 1, 1992, the Employer through its owner and chief executive officer/vice president Thomas J. Kirkwood has bid bargaining unit, on-site construction work on behalf of Lee Mechanical, a nonsignatory employer; has assigned bargaining unit work within its shop to non-bargaining unit employees; and has otherwise assigned bargaining unit work to non-bargaining unit employees in violation of Article I, Sections 1A, 2 and 3 (Employer will assign unit work to non-unit employees); Section 4 (Employer agrees to work with Local Union to obtain all work within the jurisdiction of Local 36); Section 4(A) (Employer agrees to no-

---

**4.** Tom Kirkwood suffers from kidney disease and Janet Kirkwood has multiple sclerosis.

**5.** Several of the same exhibits were filed by the parties in support of the motions or responsive pleadings. In instances of duplicate exhibits, for purposes of efficiency and clarity, the Court will cite to only one of the exhibits.

tify Local 36 before submitting a bid which excludes work within the jurisdiction of the Sheet Metal Workers); Section 4(C) (Employer will use bargaining unit employees to furnish and install materials and equipment); Section 5 (Employer will respect jurisdictional rules of the Union and will not direct non-unit employees to perform unit work); Article II, Section 1 (Employer will not subcontract or assign on-site unit work to a non-signatory employer); and other applicable provisions of this Labor Agreement. As a remedy, Local 36 requests the award of back wages and fringe benefit contributions for the work that was assigned to non-bargaining unit employees.

Zimmerman Affidavit—Attachment A.

On October 23, 1992 Ira A. Potter, of the law firm of Benson & Guest, wrote Zimmerman denying the allegations contained in the grievance. On October 29, 1992 Counterclaim–Defendant Zlotopolski, on behalf of Local 36, sent a letter to certain contractors, including Defendants/Counterclaim–Plaintiffs, informing them that a signed "Letter of Agreement" for the 1992–96 CBA had not yet been received by Local 36. Defendants/Counterclaim–Plaintiffs' Exhibit 6. On October 30, 1992 David Yates, of the law firm of Thompson & Mitchell, (replacing Benson & Guest as the Kirkwoods' counsel), wrote Zimmerman that "[e]ffective as of the end of business today, October 30, 1992, the Company will cease its operations as a sheet metal and mechanical contractor. After today, the Company will not employ any of the employees your organization has represented in times past, and will go out entirely of the contracting business." Mr. Yates further stated the "[t]he Company is in the process of attempting to sell the facilities and equipment it formerly used in connection with its sheet metal and mechanical contracting operations. No agreement has yet been concluded with any buyers with respect to the sale of any of those assets." Finally, Mr. Yates stated that "[i]n view of these developments, by this letter, the Company withdraws the contract offer embodied in its April 2, 1992 letter to Local 36. As you know, the April 2nd offer was never accepted by Local 36, and no new collective-bargaining agreement was agreed to by Local 36 and the Compa-

ny." Defendants/Counterclaim–Plaintiffs' Exhibit 12.

From November 4, 1992 to November 13, 1992 counsel for the Kirkwoods and for Local 36 exchanged letters debating the events leading up to the filing of the grievance. Defendants/Counterclaim Plaintiffs' Exhibits 13–15. On November 13, 1992 Raymond Grossman, Chairman of the LJAB, notified Tom Kirkwood that a hearing regarding the filed grievance would be conducted on December 3, 1992. Tom Kirkwood was informed that he could appear in person, delegate another person to appear on his behalf, or send Mr. Grossman his written testimony (which would be read into the record of the hearing). A copy of the LJAB Basic Operating Procedure was also included in this letter. Defendants/Counterclaim–Plaintiffs' Exhibit 16. On November 19, 1992 Local 36 sent a letter to Tom Kirkwood informing him that the December 3rd hearing date had been postponed and that he would be notified of the new hearing date. Defendants/Counterclaim–Plaintiffs' Exhibit 17. On December 31, 1992 Mr. Grossman, on behalf of the LJAB, sent a letter to Janet Kirkwood informing her that the new hearing date was January 19, 1993 at 7:00 p.m. at Schneithorst's Restaurant. Mrs. Kirkwood (like her husband) was informed that she could appear in person, delegate someone else to appear on her behalf, or send her written testimony to Mr. Grossman to be read into the record of the hearing. Another copy of the grievance and the LJAB's Basic Operating Procedure was also sent. Defendants/Counterclaim–Plaintiffs' Exhibit 19. Along with this official hearing notification, a personal note was sent informing Mrs. Kirkwood that the management members of the LJAB would be meeting for dinner at 5:30 p.m. prior to the hearing and that she was welcome to discuss her case with just the contractors present. Defendants/Counterclaim–Plaintiffs' Exhibit 19.

On January 19, 1993 a hearing was held by the LJAB on the grievance filed by Local 36 against the Company. Neither Tom Kirkwood, Janet Kirkwood, nor any attorney or other person appeared at the hearing to represent the interests of the Company. Defen-

dants/Counterclaim–Plaintiffs' Exhibit 20. However, prior to the hearing, Mr. Yates[6], on behalf of the Company, faxed to Ms. Joan Barton (of SMACNA–St. Louis), Mr. Grossman, and Mr. James I. Singer (counsel for Local 36) a letter setting out the Company's position on the matter and setting forth the "facts" as viewed by the Company. Defendants/Counterclaim–Plaintiffs' Exhibit 21.

The LJAB rendered its final decision on January 28, 1993 and the Company received a copy of the decision by letter dated May 18, 1993. The LJAB held that the Company had violated the 1992–96 CBA between Local 36 and SMACNA–St. Louis and awarded back pay in the amount of $55,699.20 to three laid-off Local 36 employees of the Company, and $267,322.78 in fringe benefit contributions to sheet metal industry employee benefit funds. Defendants/Counterclaim–Plaintiffs' Exhibit 24.

On July 16, 1993 Local 36 filed the instant action to enforce the arbitration award against the Company and for an accounting of the assets of the Company by the Kirkwoods.

### Labor Exemption to Antitrust Laws

The basic concept of a labor exemption from the antitrust laws is derived from Sections 6 and 20 of the Clayton Act, 15 U.S.C. § 17 and 29 U.S.C. § 52; and the Norris–LaGuardia Act, 29 U.S.C. §§ 104, 105, and 113. These provisions provide that labor unions are not combinations or conspiracies in restraint of trade and specifically exempt certain concerted labor activities, such as secondary picketing and group boycotts, from liability under the antitrust laws. *Connell Const. Co. v. Plumbers & Steamfitters, Local No. 100*, 421 U.S. 616, 95 S.Ct. 1830, 44 L.Ed.2d 418 (1975); *Mackey v. National Football League*, 543 F.2d 606, 611 (8th Cir.1976).

Two types of labor exemptions have developed over the years. The statutory ex-

emption extends to legitimate labor activities unilaterally undertaken by a union in furtherance of its own interests. *Mackey*, at 611 *citing U.S. v. Hutcheson*, 312 U.S. 219, 61 S.Ct. 463, 85 L.Ed. 788 (1941). However, the statutory exemption does not extend to concerted actions or agreements between unions and non-labor groups (such as an employer group). *Local 54 v. E.F. Etie Sheet Metal Co.*, 1 F.3d 1464, 1474–75 (5th Cir. 1993); *Mackey, supra*. In order to accommodate congressional policy favoring free competition in the marketplace with the congressional policy favoring collective bargaining under the National Labor Relations Act (29 U.S.C. § 151, *et seq.*), "certain union-employer agreements must be accorded a limited non-statutory exemption from antitrust sanctions." *Mackey*, at 611 *citing Connell Const. Co., supra*.

In the present case, the parties have complicated the issue of labor exemption from the antitrust laws by failing to clearly distinguish between the two types of exemptions. The issue is further complicated by the fact that the non-labor group; i.e. SMACNA–St. Louis and its two agents have been dismissed out of this case as counterclaim-defendants. After wading through the voluminous pleadings and convoluted arguments of the parties, it appears to the Court that the basic premise of the defendants/counterclaim-plaintiffs' antitrust claim(s) is that the Union wrongfully filed its grievance and processed it to arbitration because no enforceable collective bargaining agreement (CBA) existed between Local 36 and the Company. Consequently, it is the existence or non-existence of an enforceable CBA which lies at the heart of this lawsuit. Thus, the Court finds that the labor exemption at issue is the non-statutory exemption.[7]

In resolving competing labor and antitrust interests, the proper accommodation is:

> processing of a grievance is a legitimate labor activity which was undertaken by Local 36 in its belief that a collective bargaining agreement had been violated by the Company. Consequently, the statutory exemption would apply.

---

**6.** Actually the faxes were copies of a letter drafted by David Yates, but faxed by Stephen Smith (of Thompson & Mitchell).

**7.** Even if the Court were to consider the applicability of the statutory exemption, its ultimate decision would not change because the filing and

"First, the labor policy favoring collective bargaining may potentially be given preeminence over the antitrust laws where the restraint on trade primarily affects only the parties to the collective bargaining relationship ... Second, federal labor policy is implicated sufficiently to prevail only where the agreement sought to be exempted concerns a mandatory subject of collective bargaining ... Finally, the policy favoring collective bargaining is furthered to the degree necessary to override the antitrust laws only where the agreement sought to be exempted is the product of bona fide arm's-length bargaining."

*Powell v. National Football League*, 930 F.2d 1293, 1297 (8th Cir.1989); *Mackey*, at 614–15.

There is no dispute that Local 36 and the Company were signatories to the 1989–92 CBA. There is no dispute that Local 36 and the SMACNA–St. Louis had ratified the 1992–96 CBA and that Local 36 had notified the Company of this ratification. The evidence before the record shows that the Company and Local 36 were involved in negotiations over the 1992–96 CBA when Tom Kirkwood on October 6, 1992 told Dave Zimmerman, as well as the Company's employees, that T.J. Kirkwood & Sons was closing, that Tom Kirkwood was working for Lee Mechanical, and that Tom Kirkwood expected to sell the assets of T.J. Kirkwood & Sons to Lee Mechanical. The evidence also clearly shows that on October 6, 1992 (the same day that Tom Kirkwood informed Dave Zimmerman of his intentions regarding T.J. Kirkwood & Sons) Tom Kirkwood submitted the winning bid for sheet metal work at Marquette High School on behalf of Lee Mechanical. The evidence shows that following this conversation and the submission of the bid for Lee Mechanical, Local 36 filed a grievance against T.J. Kirkwood & Sons only alleging violations of certain sections of the 1992–96 CBA (these sections are also in the 1989–92 CBA). Regardless of how the defendants/counterclaim-plaintiffs viewed the merits of the grievance, the evidence indicates that the Union filed the grievance based on its belief that the 1992–96 CBA was enforceable against the Company. There is nothing on the face of the grievance which remotely infers any animosity directed at Lee Mechanical. The basis of the grievance was the long-standing collective bargaining relationship between Local 36 and the Company.

The grievance, as filed, alleges violations of Articles I and III of the 1992–96 CBA (these articles are the same as in the 1989–92 CBA). Under 8(d) of the NLRA, 29 U.S.C. § 158(d), mandatory subjects of bargaining pertain to "wages, hours, and other terms and conditions of employment ...". Articles I and III clearly relate to the terms and conditions of employment. Defendants/Counterclaim–Plaintiffs' Exhibit 11.

Finally, the defendants/counterclaim-plaintiffs have offered no evidence that either one of the CBAs at issue in this case was not the product of an "arms'-length transaction" between Local 36 and SMACNA–St. Louis or for the matter, between Local 36 and the Company.

All of the above is the customary judicial analysis regarding an antitrust challenge to an existing CBA. However, in the instant case, the primary focus of the Kirkwoods' argument is that the 1992–96 CBA was never ratified between Local 36 and the Company. They contend that their April 1992 offer to sign the 1992–96 CBA, minus the binding arbitration clause and the integrity clause, was never accepted by the Union. Defendants/Counterclaim–Plaintiffs' Exhibit 3. They further argue that even after the grievance was filed, the Union was still asking them to sign the 1992–96 CBA. Defendants/Counterclaim–Plaintiffs' Exhibit 6. However, it can reasonably be argued that the Company (via the Kirkwoods) constructively approved the 1992–96 CBA by implementing other provisions of the agreement, such as the approved wages and benefits. *See, Local 54 v. E.F. Etie Sheet Metal Co.*, at 1472.

Furthermore, even assuming that Tom Kirkwood gave some indication to Dave Zimmerman on October 6, 1992 that the Company would not be signing the 1992–96 CBA, no formal notice of the closing of the business and withdrawal of the offer contained in the April 1992 letter was given until October 30, 1992. Defendants/Counterclaim–Plaintiffs' Exhibit 12. Consequently, up until October

30th, negotiations regarding the 1992–96 CBA were still open.

Given these circumstances, the Court finds that the labor exemption continued to protect Local 36 from antitrust liability despite the expiration of the 1989–92 CBA and the not-yet signed (but still being negotiated) 1992–96 CBA.

 After the expiration of a collective bargaining agreement, the parties to the agreement have a continuing obligation to bargain in good faith. NLRA, § 8(a)(5), (d), 29 U.S.C. § 158(a)(5), (d); *see also, Litton Financial Printing Div. v. NLRB*, 501 U.S. 190, 198, 111 S.Ct. 2215, 2221, 115 L.Ed.2d 177 (1991); *NLRB v. Katz*, 369 U.S. 736, 742–43, 82 S.Ct. 1107, 1111, 8 L.Ed.2d 230 (1962). Since an employer must bargain collectively with its represented employees "with respect to wages, hours, and other terms and conditions of employment"; to refuse to bargain collectively on these mandatory subjects is considered to be an unfair labor practice. 29 U.S.C. § 158(a)(5). Before the parties reach an "impasse" in their collective bargaining negotiations, employers are obligated to "maintain the status quo as to wages and working conditions." *Powell*, at 1300. Following impasse,

"... an employer's continued adherence to the status quo is authorized. At the same time, once an impasse in bargaining is established, employers become entitled to implement new or different employment terms that are reasonably contemplated within the scope of their pre-impasse proposals. If employers exceed their labor law rights in implementing employment terms at impasse, the full range of labor law rights and remedies is available to unions."

*Powell*, at 1300–1302; *see also, Laborers Health and Welfare Trust Fund v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 544, n. 6, 108 S.Ct. 830, 833 n. 6, 98 L.Ed.2d 936 (1988). Consequently, an employer commits an unfair labor practice, if without bargaining to impasse, it effects a unilateral change of an existing term or condition of employment. *Litton Financial*, 501 U.S. at 198, 111 S.Ct. at 2221; *Litton Microwave Cooking Prod-*

*ucts v. NLRB*, 949 F.2d 249, 251 (8th Cir. 1991).

Even if the Company did not sign the 1992–96 CBA, the evidence clearly shows that negotiations had not reached an impasse until October 30, 1992. Furthermore, the defendants/counterclaim-plaintiffs' April 2, 1992 letter only proposed a change in those provisions relating to binding arbitration and integrity. The grievance, filed October 12, 1992, alleges violations of those provisions of the 1992–96 (same provisions as in the 1989–92 CBA) regarding the conditions of employment for Local 36 employees (e.g. non-assignment of unit work to non-unit employees; notification to the Union prior to submission of a bid which excludes work within the jurisdiction of Local 36, etc.). T.J. Kirkwood & Sons was obligated to adhere to all terms and conditions of employment as contained in the 1989–92 CBA until such time as an impasse had been reached; after which, it could only make unilateral changes as reasonably contemplated in its April 2, 1992 letter. Tom Kirkwood did submit a bid for Lee Mechanical prior to reaching an impasse regarding the 1992–96 CBA and Local 36 had reason to believe that sheet metal work was being done on behalf of Lee Mechanical at T.J. Kirkwood & Sons' facility and by Local 36 employees. Local 36 had reason to believe that T.J. Kirkwood & Sons had committed an unfair labor practice, and had the right to file and process its grievance.

The Court finds that the terms and conditions of employment, as contained in the 1989–92 CBA, remained in full force and effect beyond its formal expiration date, and the non-statutory labor exemption takes preeminence over the antitrust laws.

### Federal Pre-emption under the Garmon Doctrine

 Although the National Labor Relations Act itself does not contain an express pre-emption provision, the Supreme Court "has articulated two distinct NLRA pre-emption principles." *Building & Construction Trades Council v. Associated Builders*, 507 U.S. 218, ——, 113 S.Ct. 1190, 1194, 122 L.Ed.2d 565 (1993) *quoting Metropolitan Life Insurance Co. v. Massachusetts*, 471

U.S. 724, 748, 105 S.Ct. 2380, 2394, 85 L.Ed.2d 728 (1985).

"The first, 'Garmon pre-emption,' see San Diego Building Trades Council v. Garmon, [359 U.S. 236 [79 S.Ct. 773, 3 L.Ed.2d 775] (1959) ] forbids state and local regulation of activities that are 'protected by § 7 of the [NLRA], or constitute an unfair labor practice under § 8.' Garmon pre-emption prohibits regulation even of activities that the NLRA only arguably protects or prohibits. This rule of pre-emption is designed to prevent conflict between, on the one hand, state and local regulation and, on the other, Congress' integrated scheme of regulation, embodied in §§ 7 and 8 of the NLRA, which includes the choice of the NLRB, rather than state or federal courts, as the appropriate body to implement the Act."

Employers Association v. United Steelworkers AFL–CIO, 32 F.3d 1297, 1300–01 (8th Cir.1994) quoting Building & Trades Council, 507 U.S. at 224–25, 113 S.Ct. at 1194–95 (citations omitted); see also, United Steelworkers v. St. Gabriel's Hospital, 871 F.Supp. 335, 340 (D.Minn.1994).[8]

The defendants/counterclaim-plaintiffs complain that 1) the filing and processing of the October 12, 1992 grievance tortiously interfered with Tom Kirkwood's employment contract with Lee Mechanical; 2) the filing and processing of the October 12, 1992 grievance tortiously interfered with the contract for sale of T.J. Kirkwood & Sons' assets to Lee Mechanical; and 3) the filing and processing of the October 12, 1992 grievance, as well as alleged acts carried out in a "campaign of terror"[9] were intended to emotionally injure the Kirkwoods.

■ All three state-law counterclaims attack the "merits" of the grievance filed by Local 36. The "merits" of the grievance filed is not the issue in a pre-emption matter. The filing and processing of a grievance regarding alleged violations of a collective bargaining agreement is protected, or at least "arguably" protected, by the NLRA. The Company's alleged refusal to abide by the terms of either the 1989–92 or 1992–96 CBA before impasse is an unfair labor practice under § 8 and Local 36's filing and processing of a grievance is arguably protected under § 7.

■ As for the allegation of "outrageous conduct", normally "outrageous conduct" (regarding the acts, other than the filing and processing of the grievance, as alleged by the defendants/counterclaim-plaintiffs) would not be considered protected activities, such as secondary picketing or group boycotts. Furthermore, Garmon's broad pre-emption doctrine is subject to an exception when the arguably protected or prohibited activities "touch interests so deeply rooted in local feeling and responsibility that, in absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." Platt v. Jack Cooper Transport Co., 959 F.2d 91, 94–95 (8th Cir.1992) quoting Garmon, 359 U.S. at 243–44, 79 S.Ct. at 778–79.

■ The Supreme Court has declined to pre-empt a state-law claim for intentional infliction of emotional distress even when raised in a labor law context. See, Farmer v. United Brotherhood of Carpenters and Joiners of America, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977). " . . . there is no federal protection for conduct on the part of union officers which is so outrageous that 'no reasonable man in a civilized society should be expected to endure it.' " Farmer v. United Brotherhood of Carpenters and Joiners of America, 430 U.S. at 301, 97 S.Ct. at 1064

---

8. The other pre-emption doctrine, known as the Machinists pre-emption doctrine, prohibits state regulation of areas that Congress intended "to be controlled by the free play of economic forces". Machinists v. Wisconsin Employment Relations Comm'n, 427 U.S. 132, 140, 96 S.Ct. 2548, 2553, 49 L.Ed.2d 396 (1976). Under this pre-emption doctrine, states cannot regulate the economic weapons that are necessary to the collective-bargaining process. United Steelworkers v. St. Gabriel's Hospital, at 340. The Machinists pre-emption doctrine is inapplicable to the instant litigation.

9. The alleged acts carried out by Local 36 in a "campaign of terror" against the Kirkwoods relate to dead birds in their doorway, used condoms on their doorknob, cutting of their Christmas tree lights, and an accusation made by someone in Indiana that Tom Kirkwood stole Union money.

*quoting Motor Coach Employees v. Lockridge,* 403 U.S. 274, 294, 91 S.Ct. 1909, 1922, 29 L.Ed.2d 473 (1971).

Assuming arguendo, the defendants/counterclaim-plaintiffs' allegations of "outrageous conduct" are true, it is clear that the state-law claim, as it pertains to acts other than the filing and processing of the grievance, could be adjudicated without resolution of the "merits" of the underlying labor dispute. *Farmer v. United Brotherhood of Carpenters and Joiners of America,* 430 U.S. at 304, 97 S.Ct. at 1065. Resolution of this part of the tort claim does not require any reference or consideration of the special interests of Local 36 and its members in negotiating wages, hours, and working conditions. Thus, Counterclaim 3 would not be pre-empted under the *Garmon* doctrine as to the alleged acts carried out in the so-called "campaign of terror".

However, Counterclaim 3 is pre-empted under the *Garmon* doctrine as it pertains to the filing and processing of the grievance. This part of the tort claim is not distinct from the alleged collective bargaining relationship between the parties. The defendants/counterclaim-plaintiffs' claim that the filing and processing of the grievance is "outrageous" because the Company was not bound by the terms and conditions of any existing CBA could arguably form the basis for an unfair labor charge. On the other hand, filing and processing a grievance is a protected labor activity. Clearly, resolution of this part of Counterclaim 3 requires review and application of federal labor law.

### Federal Pre-emption by § 301 of the Labor Management Relations Act

Section 301(a) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a) provides:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

Over the past fifty (50) years, the Supreme Court has constantly fine-tuned the construction and application of § 301 in matters regarding jurisdiction. It has held that § 301 not only provides the federal courts with jurisdiction over controversies involving collective bargaining agreements

"but also authorizes the courts to fashion a 'body of federal law for the enforcement of these collective bargaining agreements.' Since then, the Court has made clear that § 301 is a potent source of federal labor law, for though the state courts have concurrent jurisdiction over controversies involving collective-bargaining agreements, state courts must apply federal law in deciding those claims, and indeed any state-law cause of action for violation of collective-bargaining agreements is entirely displaced by federal law under § 301. State law is thus 'pre-empted' by § 301 in that only the federal law fashioned by the courts under § 301 governs the interpretation and application of collective-bargaining agreements."

*United Steelworkers of America, AFL–CIO v. Rawson,* 495 U.S. 362, 368, 110 S.Ct. 1904, 1909, 109 L.Ed.2d 362 (1990) (citations omitted). Furthermore, the Supreme Court has construed § 301 to preempt state law claims

"where the resolution of the state law claim 'substantially depends' on the interpretation of terms or provisions of a collective bargaining agreement. If the state law claim is 'inextricably intertwined with consideration of the terms of the labor contract', that claim is preempted. If the claim is not 'inextricably intertwined' with a collective bargaining agreement, that claim is independent and is not preempted. Finally, a state law claim may involve analysis of the same set of facts as a claim arising under the collective bargaining agreement without compelling preemption."

*Hanks v. General Motors Corp.,* 906 F.2d 341, 343 (8th Cir.1990) (citations omitted); *see also, Johnson v. Anheuser Busch, Inc.,* 876 F.2d 620, 623 (8th Cir.1989).

■ The defendants/counterclaim-plaintiffs contend that § 301 pre-emption is inapplicable because 1) no CBA existed between the parties, at the time of the filing of the grievance, which requires interpretation in order to determine the merits of its state-law claims (Counterclaims 1, 2, and 3); or 2) this case does not involve the interpretation of any CBA but rather the determination of whether an enforceable CBA existed at all.

As noted before, a collective-bargaining relationship clearly existed between the parties during the relevant time-period. Even assuming that the 1992–96 CBA was not in effect between Local 36 and the Company, the terms and conditions of the 1989–92 CBA were still in effect at the time of the filing of the grievance.

■ The pre-emptive effect of § 301 extends to state-law tort claims if the duty alleged to have been violated is created by a CBA and is without existence independent of the CBA. *Steelworkers v. Rawson,* 495 U.S. at 369, 110 S.Ct. at 1909; *Schweiss v. Chrysler Motors Corp.,* 922 F.2d 473, 476 (8th Cir.1990); *Hanks,* at 343–44.

The tort claims as alleged in Counterclaims 1 and 2 cannot be litigated without relying on the collective-bargaining relationship of the parties, either pursuant to the 1989–92 CBA or the 1992–96 CBA. The resolution of these claims "substantially depends" on the interpretation of one or both of these collective-bargaining agreements.

As to Counterclaim 3, that part of this tort claim referencing the filing and processing of the grievance as "outrageous conduct" requires review of the parties' collective-bargaining relationship. Whether the filing and processing of the grievance constitutes "outrageous conduct" because the grievance lacked "merit" due to the alleged non-existence of an enforceable collective-bargaining agreement (as the defendants/counterclaim-plaintiffs argue), clearly requires the Court to review federal labor law to determine if under the circumstances of this case an enforceable collective-bargaining agreement did exist, and if so, to interpret such an agreement.

However, that part of Counterclaim 3 which references certain alleged activities carried out by Local 36 in a "campaign of terror" against the Kirkwoods, does not require a determination of whether an enforceable collective-bargaining agreement existed, and if so, the interpretation of such an agreement. The defendants/counterclaim-plaintiffs' tort claim of intentional infliction of emotional duress, as regards the alleged "campaign of terror", is independent of any CBA. Adjudication of this state-law claim will not interfere with the collective-bargaining process, deter effectiveness of arbitration, or result in conflicting interpretations of a collective-bargaining agreement. *Hanks,* at 344–45. Consequently, this portion of Counterclaim 3 is not pre-empted by § 301.

Having found that Counterclaims 1, 2 and that portion of Count 3 regarding the filing and processing of the grievance are pre-empted by § 301, the Court finds no need to address the merits of these counterclaims.

### Tort of Intentional Infliction of Emotional Distress

■ Under Missouri law, the elements of the tort of intentional infliction of emotional distress are: 1) defendant's conduct was extreme and outrageous; 2) defendant acted in an intentional or reckless manner; and 3) defendant's conduct resulted in severe emotional distress. *Miller v. Wackenhut Services, Inc.,* 808 F.Supp. 697, 700–01 (W.D.Mo. 1992) *citing Hendrix v. Wainwright Industries,* 755 S.W.2d 411, 412 (Mo.App.1988); *Hardge–Harris, et. al. v. Pleban, et al.,* 741 F.Supp. 764, 776 (E.D.Mo.1990) *aff'd* 938 F.2d 185 (8th Cir.1990); *see also, Nazeri v. Missouri Valley College,* 860 S.W.2d 303, 316 (Mo.1993).

■ "As a threshold it is first for the court to determine whether an average member of the community upon learning of the facts alleged by plaintiff would exclaim 'outrageous!'" *Hendrix,* at 412. The conduct alleged must be so outrageous "as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hendrix,* at 412 *citing Pretsky v. Southwestern Bell Telephone Co.,* 396 S.W.2d 566, 569 (Mo.1965).

■ The defendants/counterclaim-plaintiffs alleged that (besides the filing of the grievance), other "outrageous" acts committed by Local 36 and its agents/members include: one or more dead birds in their screen door; used condoms on doorknobs, the cutting of their Christmas tree lights, and the accusation that Tom Kirkwood stole union money. The Court need not address the issue of whether these acts constitute "outrageous" conduct because the defendants/counterclaim-plaintiffs have failed to present any affirmative evidence or facts linking Local 36 and its agents/members to the commission of any one of these acts.

Mr. Kirkwood concedes that he has absolutely no proof that anyone connected with Local 36 committed any of the acts of which he complains. T. Kirkwood Deposition, pgs. 350–51, 529–30. He simply believes that Local 36 had some connection with the commission of these acts because they occurred after he began work with Lee Mechanical. However, as both he and Ernie Gibson have testified, during Mr. Kirkwood's employment with Lee Mechanical, Lee Mechanical was targeted with union activity by not only Local 36, but the boilermakers' union and the Teamsters. T. Kirkwood Deposition, pg. 535–36; E. Gibson Deposition, pgs. 132, 136–37, 139–40. In fact, Mr. Gibson testified that most of the threats made, during Mr. Kirkwood's employment with Lee Mechanical, came directly from the boilermakers. E. Gibson Deposition, pg. 139. As for the accusation of stealing money from the Union, Tom Kirkwood testified that, while in Indiana, this accusation came from a Local 20 member in the heat of an argument following Mr. Kirkwood's dismissal of the man from employment. T. Kirkwood Deposition, pgs. 531–32. Furthermore, the Local 20 member did not disclose the source of his accusation nor did Tom Kirkwood ask him. T. Kirkwood Deposition, pg. 532.

The complaining party has the burden of presenting evidence sufficiently supporting the disputed material facts that a reasonable jury could return a verdict in favor of the complaining party. *Gregory v. The City of Rogers, Ark., et al.,* 974 F.2d 1006, 1010 (8th Cir.1992) *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. at 2510. It is for this Court to determine whether the complaining party has submitted "sufficient probative evidence [that] would permit a finding in [her] favor on more than mere speculation, conjecture or fantasy." *Gregory,* at 1010 quoting *Barnes v. Arden Mayfair, Inc.,* 759 F.2d 676, 681 (9th Cir.1985). "A mere scintilla of evidence is insufficient to avoid summary judgment. If the evidence the [plaintiff] puts forward 'is merely colorable' or 'is not significantly probative', the [defendant] is entitled to summary judgment as a matter of law. *Gregory,* at 1010 *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249–50, 252, 106 S.Ct. at 2510–2511, 2512.

The defendants/counterclaim-plaintiffs have offered nothing to support their allegations. They simply speculate that Local 36 had something to do with the commission of these offensive [10] acts. Such speculation or conjecture is not enough to withstand the scrutiny of summary judgment nor is reliance on their bare allegations sufficient to raise a genuine issue of material fact. *See, Green v. St. Louis Housing Authority,* 911 F.2d 65, 68 (8th Cir.1990). The plaintiffs/counterclaim-defendants are entitled to summary judgment as a matter of law.

Believing that T.J. Kirkwood and Sons, Inc. was in violation of Local 36 agreements, Local 36 filed a grievance against T.J. Kirkwood and Sons, Inc. The Kirkwoods had every opportunity to present to the LJAB their belief that they were not bound by the provisions of Local 36's agreements. Even after the arbitration award was made, they could have sought an administrative appeal, and/or judicial intervention by seeking to vacate the arbitration award. Instead they have waited until Local 36 filed this action for enforcement of the arbitration award and motion for summary judgment before asserting the arguments that could have (and should have been) raised before the LJAB. Given the circumstances, the Court suggests,

**10.** The Court agrees that such acts would be offensive to the average member of the community; however, the Court refrains from legally determining whether such acts "go beyond all possible bounds of decency" so as to constitute "outrageous conduct".

without actually deciding the issue, that the Kirkwoods and T.J. Kirkwood and Sons, Inc. have quite possibly waived any defenses that they may have had to confirmation of the arbitration award. *See, Domino Group v. Charlie Parker Mem. Foundation,* 985 F.2d 417, 419–20 (8th Cir.1993); *Local Union No. 36 v. Atlas Air Conditioning Co.,* 926 F.2d 770, 772 (8th Cir.1991) *aff'g Local Union No. 36 v. Atlas Air Conditioning Co.,* 722 F.Supp. 561 (E.D.Mo.1989).

Finally, the Court agrees that Count II of the Union's complaint (claim for accounting against the Kirkwoods individually) should be stayed pending the outcome of Count I. The Court agrees that the Kirkwoods can be called upon to account for the assets of T.J. Kirkwood and Sons, Inc. only in the event that Local 36 is successful on Count I of its complaint.

In conclusion, the Court finds that the Local 36's filing and processing of the October 12, 1992 grievance against T.J. Kirkwood and Sons, Inc. is exempt from federal antitrust law and pre-empts the state-law counterclaims for intentional interference with an employment contract, intentional interference with a contract for sale of business assets, and intentional infliction of emotional distress. The Court further finds that defendants/counterclaim-plaintiffs have failed to set forth affirmative evidence or facts creating a material issue of fact regarding Local 36 and its officers/agents/members alleged involvement with waging a "campaign of terror" against the Kirkwoods. This finding is applicable to all counterclaim-defendants.

Summary judgment will be granted to the plaintiff/counterclaim-defendants as to Counts I, II, III, IV, and V of the Amended Counterclaim. Count II of Local 36's complaint will be stayed until a final ruling is entered as to Count I of Local 36's complaint. Summary judgment will be denied to the defendants/counterclaim-plaintiffs as to Counts I and II of Local 36's complaint.